1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARY A. JASSO, et al.,

11              Plaintiffs,                    No. CIV S-05-2649 GEB EFB PS

12        vs.

13   CITIZENS TELECOMMUNICATIONS
     COMPANY OF CALIFORNIA, INC., et al.,       ORDER
14              Defendants.
                                          /
15

16        This action, in which all plaintiffs are proceeding pro se, was referred to the undersigned

17   on August 28, 2006.  It is currently before the court on defendants' motion to dismiss.

18        Defendants removed this action from Lassen County Superior Court on December 30,

19   2005.  In an order dated February 10, 2006, Magistrate Judge Peter A. Nowinski (ret.) denied

20   plaintiffs' motions to remand the action to state court.[1]   That same order submitted without oral

21   argument a motion to dismiss filed by defendants Modoc RSA Limited Partnership d/b/a Verizon

22   Wireless and Cellco Partnership d/b/a Verizon Wireless (in which all other eight defendants

23   joined).  This order addresses that motion as well as two "Requests for Judicial Notice" filed by

24   plaintiffs on January 18, and 30, 2006.  After careful review of the moving and opposing papers,

25

26        [1] The case was originally referred to Magistrate Judge Nowinski pursuant to Local Rule
     72-302(c)(21).  This action was then reassigned to the undersigned on August 28, 2006.

                                              1

1   the court issues the following order.

2   I. <u>BACKGROUND</u>

3          Plaintiffs are employees and family members of employees who worked seasonally for

4   the California Department of Forestry and Fire Protection at the "Likely Mountain

5   Telecommunications and Lookout Tower Worksite" (the "LMT"), in Lassen County, California.

6    Plaintiffs allege that they have been personally injured by radiation emitted from cellular

7   equipment at that location and that their injuries are somehow the result of defendants'

8   negligence.  According to the complaint, each of the defendants jointly and severally owned,

9   licensed, used, managed, and/or maintained the "telecommunication towers, vaults, antennas,

10  microwave dishes, cellular panels and other telecommunication equipment" located at the LMT.

11  *See* "Notice of Removal" Exhibit A, ("Complaint"), at ¶ 5.  Plaintiffs allege that the

12  telecommunications equipment at the LMT "emitted dangerous radiation" that caused them to

13  suffer a variety of physical and mental injuries.  Complaint, at ¶ 12.  The complaint contains a

14  variety of allegations, and purportedly asserts six separate causes of action against all

15  defendants.  As discussed herein, the causes of action consist of a mish-mash of allegations, most

16  of which fail, as stated, to lend themselves to meaningful consideration by this court.  For the

17  reasons set forth below, the complaint is dismissed with leave to amend.  However, as explained,

18  to the extent that plaintiffs are attempting to assert federal question claims under statutes that do

19  not provide for a private right of action, no amendment can cure such claims.  If plaintiffs choose

20  to amend, they will be required to redraft the complaint to assert a discrete and specific cause of

21  action for each claim and to omit redundant causes of action.

22  II. <u>PLAINTIFFS' REQUESTS FOR JUDICIAL NOTICE</u>

23         Plaintiffs have filed two "requests for judicial notice," one on January 18, 2006, and

24  another on January 30, 2006.  These requests ask the court to take notice of "laws that

25  defendants allegedly violated."  Nearly identical in content, each "request" consists of nearly 300

26  pages.

The 300 pages include, among other things, a laundry list of citations to various state and federal laws and regulations, pictures of the LMT, and numerous articles concerning the dangers and effects of radiation.  In each request, plaintiffs state that "they are not questioning these laws and regulations but [are] using them as substantiation of their claim that the defendants did violate said laws and misuse their position in the action of not informing of [*sic*] plaintiffs and their employers . . . of the dangers involved . . . ."

Defendants oppose the requests.  Their objections relate in large part to the various articles and other publications submitted by plaintiffs.  They note that these materials address issues subject to factual dispute, and further object on grounds of "hearsay, lack of foundation of personal knowledge, authenticity, and improper expert and lay opinion."  The objections are well-taken and, as explained below, the plaintiffs' requests for judicial notice are denied.

The party requesting judicial notice bears the burden of persuading the court that the particular fact is not reasonably subject to dispute and is capable of immediate and accurate determination by resort to a source "whose accuracy cannot reasonably be questioned."  *In re Tyrone F. Conner Corp., Inc.*, 140 B.R. 771, 781 (E.D. Cal. 1992); Fed. R. Evid. 201(b).  The party making the request must also supply the court with the source material needed to determine whether the request is justified.  *Id.* at 781.  Specifically, the party must submit to the court a formal pleading, entitled "Request for Judicial Notice" that enumerates (1) the basis for taking judicial notice, and (2) the item to be noticed (with copies, preferably certified, of the files or materials attached).  *American Glue & Resin v. Air Products & Chemicals*, 835 F. Supp. 36, 40-41 (D. Mass. 1993).

Here, plaintiffs cite a series of California state laws and regulations and numerous federal laws and regulations, and ask the court to "take judicial notice" that defendants "allegedly did violate" these laws and regulations.  By this request, it appears that plaintiffs want the court to find that defendants violated the cited laws and regulations, or alternatively, to find that plaintiffs' mere citation to these numerous laws and regulations is sufficient to state a claim

against defendants for violations thereof.  Such a request is not a true request for judicial notice.[2]

A citation to laws and regulations as authority does not require a request for judicial notice.

Moreover, taking judicial notice of the cited laws and regulations does not obviate plaintiffs'

burden to state a claim, which under the pleading requirements of the Federal Rules of Civil

Procedure ("Fed. R. Civ. P."), requires plaintiffs to include in their *complaint* a short and plain

statement of the claim that shows entitlement to relief.  A mere citation to a law or regulation

does not satisfy this requirement.  *See* Fed. R. Civ. P. 8(a); *see also M/V American Queen v. San*

*Diego Marine Constr. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) (a court may not take judicial

notice of facts essential to support a contention in a case before it without formal introduction of

evidence).  Similarly, attaching photos and articles to a complaint is no substitute for satisfying

the requirements of Rule 8(a).  Finally, as defendants correctly point out, the photos, articles and

other materials opining on the controversial issue of radio frequency transmissions address issues

subject to factual dispute.  They are also inadmissible on several grounds, including hearsay,

lack of foundation of personal knowledge and authenticity, and improper attempts to assert lay

and expert opinions.

Because plaintiffs have failed to provide an adequate basis for this court to take judicial

notice of *any* of the materials submitted in the their requests, both requests for judicial notice are

denied.

////

////

---

[2] Judicial notice may be taken of adjudicative or legislative facts. Adjudicative facts are "usually those facts that are in issue in a particular case," and are generally known or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be disputed." *Korematsu v. United States*, 584 F. Supp. 1406, 1414 (N.D. Cal. 1984). Legislative facts are "established truths, facts or pronouncements that do not change from case to case but are applied universally." *Id.* at 1414. These are facts that a court may take notice of when interpreting a statute or considering commercial standards, for example.  *Id.*  Under this rubric, the items included in plaintiffs' requests do not qualify as appropriate "facts" to be judicially noticed.

1    III.  <u>MOTION TO DISMISS</u>

2            Defendants move to dismiss for failure to state a claim pursuant Fed. R. Civ. P. 12(b)(6).

3    Defendants argue that plaintiffs' state law claims are preempted by federal statutes and FCC

4    regulations.  As to any purported federal claims, defendants argue that such claims are too

5    vaguely plead and lack the specificity required to state a claim.  Defendants further argue that

6    most of plaintiffs' federal claims are within the primary jurisdiction of the FCC and should

7    therefore not be heard by this court.  However, as discussed below, it is not clear from the

8    complaint that plaintiffs are asserting federal claims at all.  Rather, one reading of the complaint

9    is that it simply asserts state tort claims for negligence and merely relies on federal regulations or

10   statutes to establish the relevant duty or standard of care.  In any case, the court agrees that the

11   claims are too poorly plead to discern exactly what claims plaintiffs are attempting to assert.

12           A.  <u>Standard</u>

13           A complaint should not be dismissed under Fed. R. Civ. P. 12(b)(6) unless it appears

14   beyond doubt that plaintiff can prove no set of facts in support of its claims which would entitle

15   plaintiff to relief.  *NOW, Inc. v. Schiedler*, 510 U.S. 249, 256 (1994); *Cervantes v. City of San

16   Diego*, 5 F.3d 1273, 1274-75 (9th Cir. 1993).  Dismissal may be based either on the lack of

17   cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal

18   theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

19           The complaint's factual allegations are accepted as true.  *Church of Scientology of

20   California v. Flynn*, 744 F.2d 694 (9th Cir. 1984).  General allegations are presumed to include

21   specific facts necessary to support the claim.  *NOW*, 510 U.S. at 256 (quoting *Lujan v. Defenders

22   of Wildlife*, 504 U.S. 555, 561 (1992)).  Of particular relevance here, in the context of

23   defendants' preemption argument, the court must construe the plaintiffs' pleading in the light

24   most favorable to plaintiffs and resolve all doubts in plaintiffs' favor.  *Parks School of Business,

25   Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  As will be seen below, doubt as to

26   whether plaintiffs are attempting to plead private causes of action under the various federal

statutes and regulations they cite, or instead, are attempting to assert state tort law claims of negligence for personal injuries is a threshold question to the preemption analysis.  Where two readings of the complaint are possible, such doubt on this motion must be resolved under the construction favoring plaintiffs, which is crucial to the determination of whether to permit plaintiffs the opportunity to amend to clearly state a tort claim.

The court may disregard allegations contradicted by the complaint's attached exhibits. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir. 1998).  Furthermore, the court is not required to accept as true allegations contradicted by judicially noticed facts.  *Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).  The court may consider matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986) (abrogated on other grounds by *Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991)).  "The court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal.  *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

B.  The Complaint

The complaint, filed in state court on October 14, 2005, is entitled  "Complaint for Negligence Per Se."  It purportedly asserts six causes of action.  Those claims, even construed liberally, amount to a mish-mash of allegations that defendants violated numerous state and

1   federal laws and regulations, and that such violations caused plaintiffs to suffer various physical

2   and mental injuries.  As a whole, they suggest that plaintiffs are attempting to assert tort claims

3   for alleged personal injuries, based on allegations of negligence.  The complaint is not clear

4   however, as to what conduct forms the basis for the alleged negligence.  The problem with the

5   complaint is over-inclusiveness to the extreme that one must speculate as to which of many

6   possible claims hinted at--but never clearly stated in any given count-- are actually being

7   asserted.  The result is a lengthy, prolix narration that lacks any clearly stated cognizable legal

8   theories and facts sufficient to a claim.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

9   (9th Cir. 1990).  Further confusing matters, the complaint includes redundant causes of action

10  (presumably for negligence) and references to statutes which do not provide for private rights of

11  action.  The reliance on those statutes is not explained and one must guess as to plaintiffs' intent.

12      Moreover, the complaint references several regulatory provisions which, plaintiffs say,

13  defendants have violated.  Again, the reliance on the cited provisions are not explained.  One

14  must speculate as to plaintiffs' purpose.  The resulting confusion raises the additional question of

15  whether plaintiffs are trying to assert some form of state regulatory claim that is preempted.

16  Alternatively, one could speculate that plaintiffs are *only* suing under state tort law for alleged

17  personal injuries caused by defendants' alleged negligence.  The caption of the complaint, styled

18  as "Negligence Per Se," suggests that the vague allegations of negligence are predicated on

19  claims that certain statutes (establishing relevant standards of care) have been violated.  This is

20  the essence of a "negligence per se" claim.  However, plaintiffs must resolve this confusion in

21  the body of the complaint which must include a short and plain statement of the claim being

22  presented.

23      Defendants have moved to dismiss on grounds of preemption, the primary jurisdiction

24  doctrine, and the failure of each of plaintiffs' alleged causes of action to state a claim.  The

25  complaint, particularly in pro se cases, must be construed liberally to afford the plaintiff the

26  benefit of any doubt.  *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 623 (9th

1    Cir. 1988).  Before dismissing a pro se complaint for failure to state a claim, the plaintiff should

2    be given a statement of the complaint's deficiencies and an opportunity to cure.  *Id*.  As

3    explained in more detail below, the court is dismissing the complaint for failure to state a claim

4    rather than on grounds of preemption.[3]  The court takes this approach because it finds the

5    complaint to be so poorly plead that a meaningful determination of whether plaintiffs have stated

6    particular claims is almost impossible.  Furthermore, because of the vague and unspecified

7    nature of the allegations in the complaint, the court also finds that a meaningful analysis of

8    defendants' rather nuanced bases for dismissal is also nearly impossible.  The complaint is not

9    clear as to what precise claim(s) is being presented.  In addition to an inability to meaningfully

10   analyze all the claims under defendants' proffered legal theories, the court finds some of those

11   theories unavailing under some circumstances and therefore an improper basis for dismissal here,

12   particularly at this point when neither the court, nor defendants by their own admission,

13   necessarily understand precisely all of plaintiffs' claims.  With this in mind, the court examines

14   plaintiffs' apparent claims for negligence.

15              1.  <u>First Cause of Action</u>

16              In their "first cause of action," plaintiffs allege that defendants' "omissions, negligence,

17   endangerment and failure to warn" caused plaintiffs bodily harm and "severe emotional

18   distress."  Complaint, at ¶¶ 18-19.  This cause of action, while hardly a model of clarity, attempts

19   to assert a personal injury claim for negligence and/or emotional distress.  To state a claim for

20   negligence under California law, a plaintiff must allege that: (1) defendants owed plaintiff a

21   duty, (2) defendants breached that duty, (3) and, as a direct and proximate result of that breach,

22   (4) plaintiffs suffered damages.  *Lockheed Martin Corp. v. Superior Court*, 29 Cal.4th 1096,

23   1106 (2003).  "While negligence is ordinarily a question of fact, the existence of duty is

24   _____

25           [3]  Defendants argue that these state law claims (and any other state law claims) are
     preempted by the Federal Communications Act of 1934, 47 U.S.C. §§ 151 *et seq*. (referred to
26   herein as the "FCA").

generally one of law." *Osornio v. Weingarten*, 124 Cal. App. 4th 304, 316 (Cal. Ct. App. 2004).
Thus, in order to state a claim, the plaintiff must allege facts showing the existence of a legal
duty owed by the defendant to the plaintiff.  *Id.*

Although plaintiffs have alleged that defendants, "failed in their duty to uphold the laws
of the State of California, and the United States in regards to radiation exposure to humans,"
Complaint, at ¶ 26, and that such failure "caus[ed] injuries to all the above plaintiffs . . . who
worked lived or visited at LMT," *id.*, they have not alleged any fact showing the existence of a
legal duty owed to them by the defendants and how that duty was breached.   "The court is not
required to accept legal conclusions cast in the form of factual allegations if those conclusions
cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d
752, 754-55 (9th Cir. 1994).  The bald allegation that defendants owed plaintiffs a duty, and
breached that duty does not satisfy plaintiffs' burden of stating a claim.  While one always has a
duty to exercise due care under the circumstances, plaintiffs must be clear on the relevant
standard of care applicable here, the source of that standard, and what factual allegations show
that the duty was breached.  Some lenity, to be sure, must be afforded to these pro per plaintiffs.
The court is also mindful of the lenity under notice pleading.  However, plaintiffs' scatter shot
approach to citing several state and federal statutory and regulatory schemes creates confusion
over a fundamental threshold to suit–whether there is subject matter jurisdiction to entertain the
claims at all in light of defendants' argument of preemption.

As to the apparent claims of emotional distress, it is not entirely clear whether plaintiffs
intend to state a claim for intentional or negligent infliction of emotional distress, although it
appears most likely that plaintiffs' claim sounds in negligence: "defendants caused. . . plaintiffs
. . .severe emotional distress when [they learned that they had been exposed to radiation] . . . due
to the . . . negligence [of defendants]."  Complaint, at ¶ 19.

"There is no independent tort of negligent infliction of emotional distress.  The tort is
negligence, a cause of action in which a duty to the plaintiff is an essential element.  That duty

may be imposed by law, be assumed by the defendant, or exist by virtue of a special

relationship." *Potter v. Firestone Tire and Rubber Co.*, 6 Cal.4th 965, 984-85 (1993).  As

discussed above, plaintiffs have failed to allege the existence of a legal duty owed to them by

defendants, which means they have failed to state a claim for both negligence and negligent

infliction of emotional distress.

Accordingly, the court finds that the "first cause of action" fails to state a cognizable

claim and must be dismissed.  For the reasons explained below regarding preemption, this claim

is dismissed with leave to amend.

### 2. Second Cause of Action

The "second cause of action" again alleges that defendants, through unspecified

negligence and "omissions," caused plaintiffs "injuries and damages."  It is difficult to discern

what purpose plaintiffs have for asserting this negligence claim separately from the first cause of

action, but the court notes a reference to an alleged failure to warn that is not included in the first

claim.  If the failure to warn of a dangerous condition is the predicate of this cause of action,

plaintiffs must make that clear, identify the duty and the source of the duty, and allege facts

showing a breach.

In this same cause of action, plaintiffs also allege that defendants "failed to uphold the

laws of the Federal Communications Commission ("FCC")" by failing "to make environmental

studies in regards to human radiation exposure and field expansion at LMT."  As part of this

same cause of action, plaintiffs allege defendants violated the following laws and regulations:

"OSHA standard, General Duty Clause OSH Action Section 5(a); Federal Labor Law; Title 29

Labor, Chapter 15 - Occupational Safety and Health, Sec. 654; C.F.R. 1910: Occupational Safety

and Health Standards, subpart R, Special Industries, 1910.268, Telecommunications subparts

1910.268(a)(1), 1910.268(c), 1910.268(e), 1910.268(p)(1), 1910.268(p)(2), 1910.268(p)(3);

C.F.R. 47: Chapter 1, part 1, subpart I, , Sec. 1.1305, 1.1306, 1.1307(a)(b)(c), 1.1310;  Federal

Hazardous Substance Act (codified at 15 U.S.C.  1261-1278) – Public Law 86-613; 74 Stat. 372,

July 12, 1960, as amended); California Constitution – Article 1 - Sec. 7, Sec 28; CFR 20

Nonionizing radiation, 1910.97; California Code of Regulations; Title 8, Subchapter 7, General

Industry Safety Orders, Group 14.  Radiation and Radioactivity Article 104; OSHA Multi-

employer Policy, OSHA Instruction CPL2.103 at II-28, 29 (1994)."  Plaintiffs allege that as a

result of such violations, they suffered "body harm and injuries."  Complaint, at ¶ 23.  The

problem with plaintiffs' pleading becomes apparent.

        The court is flummoxed by this long list of legal citations.  While it appears that plaintiffs

again seek to allege a cause of action for negligence, they also seem to allege some kind of claim

for defendants' alleged violations of this long list of laws and regulations.  To the extent this

"second cause of action" is one for negligence, it is dismissed for the same reasons set forth in

the preceding section.

        Furthermore, the court is uncertain as to what cause of action, or what relief, plaintiffs

seek with regard to their allegations that defendants "failed to uphold" or violated the numerous

cited laws and regulations.  Plaintiffs fail to identify any provision of federal law that would

allow them to bring a federal cause of action against the defendants for these purported

violations, nor do they allege specific facts that show any violation of federal law.  As explained

above, it is not the court's job to review plaintiffs' unexplained citations to various laws and

regulation and craft therefrom a cause of action, or any other cognizable claim.  The court will

allow plaintiffs leave to amend this claim to assert a claim of negligence if it is, in fact, distinct

from the first cause of action.  However, any claims attempting to sue directly under OSHA, 29

U.S.C. § 654(a)(1), is futile.  *See Crane v. Conoco, Inc.,* 41 F.3d 547, 533 (9th Cir. 1994)

("OSHA violations do not themselves constitute a private cause of action for breach.").

Plaintiffs are further admonished that to the extent they are attempting to sue directly under the

several other cited statutes, they must demonstrate that the particular statute provides for a

private right of action.

////

3. Third Cause of Action

In their "third cause of action" plaintiffs allege that defendants "took no action to safeguard the health and safety of the minor child, who visited LMT, and by their omission, negligence, endangerment and failure to uphold these requirements" caused harm "to said minor child, exposed plaintiffs to dangerous radiations [*sic*] causing injuries and damages known and not known." Complaint, at ¶ 24.  This "cause of action" appears to be another attempt to assert a negligence claim, this time for injuries suffered by a minor child (and plaintiffs).  It is unclear what purpose plaintiffs intend by asserting this negligence claim in a separate cause of action, and how it is distinct from the other negligence claims.

For the reasons articulated above regarding the first cause of action, the court dismisses the third cause of action for failure to state a claim and grants plaintiffs leave to amend.

4. Fourth Cause of Action

In the "fourth cause of action," plaintiffs allege that defendants "failed in their duty to uphold the laws of the State of California, and the United States, in regards to radiation exposure to humans, causing injuries to all the above-plaintiffs, adult and minor child, who worked, lived or visited at LMT. . . ."  Complaint, at ¶ 26.

Again, the court is unable to discern what claim plaintiffs seek to allege in this "cause of action" and, if it purports to be another claim for negligence, how it is distinct from the other negligence claims.  Plaintiffs do not identify the specific legal provision that defendants allegedly violated nor do they allege any facts showing entitlement to relief under those laws as a result of the alleged violations.  Accordingly, the court dismisses this cause of action and grants plaintiffs leave to amend.

5. Fifth Cause of Action

The "fifth cause of action" is a repetition of the previous claims insofar as it alleges that plaintiffs suffered injuries and damages as "a direct, proximate and legal result of the negligence of all the above defendants, who failed in their duty to uphold the laws, standards, regulations,

12

1  statues [*sic*], acts, Constitutional Rights, Federal and State. . . ."  Complaint, at ¶ 28.

2      This reprise of plaintiffs' attempt to state a claim for negligence is dismissed for the

3  reasons articulated above.  Plaintiffs are granted leave to amend but are admonished not to

4  include redundant claims.

5              6.  Seventh Cause of Action

6      There is no "sixth cause of action" in the complaint.  Plaintiffs incorrectly number their

7  next cause of action as the "seventh cause of action."  In this cause of action, plaintiffs again

8  allege that "as a direct, proximate and legal result of the negligence of the defendants and each of

9  them, plaintiffs were hurt and injured in their health, mental capabilities, strength and activity,

10  sustaining injury to their body and shock and injury to their nervous system and person . . . ."

11  Complaint, at ¶ 30.  This appears to be another reprise of plaintiffs' attempt to state a claim for

12  negligence.  Plaintiffs provide nothing to show how it is distinct from the other negligence

13  claim(s) and it is dismissed for the same reasons articulated above.  Plaintiffs are granted leave

14  to amend if, in fact, there is a separate and distinct claim for negligence.  However, plaintiffs are

15  again admonished not to include redundant causes of action.

16      C.  Preemption

17      As noted, defendants argue that all of plaintiffs' state law claims are preempted by the

18  FCA.  Specifically, defendants argue that adjudication of plaintiffs' state law claims would be

19  tantamount to state regulation of technical wireless network standards and radio frequency

20  ("RF") emissions.  Defendants rely on sections 332(c)(7)(b)(iv) and 332(c)(3)(A) of the FCA.

21  They argue that these provisions divest states of the authority to regulate technical wireless

22  network standards and RF emissions.  While it is clear that state regulation of wireless networks

23  is preempted, it is a *non sequitur* to conclude that all state tort law claims for personal injury due

24  to emissions is preempted and displaced.  The latter proposition is far from clear.

25  ////

26  ////

Section 332(c)(7)(b)(iv) of the Communications Act provides, narrowly, that:

> No state or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities *on the basis of the environmental effects* of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

47 U.S.C. § 332(c)(7)(b)(iv) (emphasis added). Defendants argue that this provision precludes this court from adjudicating claims that arise from state law which concern damages caused by negligent RF emissions. Defendants assert that "even a state law action that sought only to enforce federal rules would constitute a 'regulation of facilities operation that intrudes impermissibly into an area of exclusive Commission authority.'" *See* Motion to Dismiss, 12:23-25 (citing *Petition of Cingular Wireless LLC for Declaratory Ruling that Provisions of Anne Delete Duplicate County Zoning Ordinance are Preempted*, Memorandum Opinion and Order, 18 F.C.C.R. 13126, 13136, ¶ 19 (2003)). Notably, this proposition is borrowed from an FCC ruling regarding preemption of zoning ordinances, not state law tort claims. Here, the question is whether application of California tort law for negligence in the context of personal injury necessarily equates to state regulation of the specific topic preempted by section 332(c)(7)(b)(iv). That topic is the authority of states to assert environmental regulatory jurisdiction over the placement, construction, and modification of wireless facilities to the extent that those facilities comply with the Commission's regulations concerning radio frequency emissions. The language of that provision does not say that state tort law for negligence is preempted and displaced if such a facility results in personal injury from exposure due to negligent construction or operation of the facility. The focus is regulation of the placement, construction, and modification of such facilities on the basis of the environmental effects of the emissions. It does not appear to include tort liability for personal injury. Where the Commission's regulations are satisfied, state environmental statutes and regulations regarding disclosure of impacts or zoning restrictions appear to be displaced by federal law. However, it is

14

1   not apparent that state tort personal injury damages for negligence in the construction or

2   operation of the facility are categorically preempted.

3          Section 332(c)(3)(A) of the FCA supplies little if any further light on the matter.  That

4   section provides, in relevant part, that "no state or local government shall have any authority to

5   *regulate the entry of or the rates charged* by any commercial mobile service or any private

6   mobile service. . . ."  47 U.S.C. § 332(c)(3)(A) (emphasis added).   Displacement of the authority

7   to regulate rates charged does not equate with the displacement of state tort law for negligence.

8   Rather, the limitation on state authority is carefully circumscribed to the specific topic referenced

9   in section 332(c)(3)(A).  For example, an FCC ruling concerning state law claims of false

10  advertisement and fraud, held that "section 332 does not generally preempt the award of

11  monetary damages by state courts based on state consumer protection, tort, or contract claims."

12  *In re the Matter of Wireless Consumers Alliance, Inc.*, 15 F.C.C.R. 17021, 17022, ¶ 2 (2000).

13         Furthermore, several federal courts have found that certain claims sounding in state law

14  are not necessarily preempted by the FCA.  The Seventh Circuit has held that state law claims

15  for breach of contract, consumer fraud, and unjust enrichment based on allegations of improper

16  billing fall outside of the scope of section 332(c)(3)(A) and thus are not preempted.  *Fedor v.*

17  *Cingular Wireless Corp.*, 355 F.3d 1069, 1072-74 (7th Cir. 2004).  Similarly, in *In re Wireless*

18  *Telephone Radio Frequency Emissions Products Liability Litigation*, 327 F. Supp. 2d 554 (D.

19  Md. 2004), a case involving personal injury claims against manufacturers of cellular telephones,

20  the court held that sections 332(c)(3)(A) and 332(c)(7)(B)(iv) of the FCA did not completely

21  preempt plaintiffs' state law claims.  The court pointed to a crucial provision in the FCA, its

22  savings clause, which preserves state law claims.  *Id.* at 566.  The savings clause provides,

23  "*[n]othing* in this chapter contained *shall in any way abridge or alter the remedies now existing*

24  *at common law or by statute*, but the provisions of this chapter are in addition to such remedies."

25  47 U.S.C. § 414 (emphasis added).  The court in *TPS Utilicom Services, Inc. v. AT&T Corp.*, 223

26  F. Supp. 2d 1089 (C.D. Cal. 2002), came to a similar conclusion after consideration of the

1    savings clause and held that the FCA does not completely preempt all state law claims.  *Id.* at

2    1099-1100.

3         The court recognizes that several of these cases address the issue of "complete

4    preemption" rather than ordinary preemption.  Complete preemption arises in the context of

5    determining whether removal from state court is appropriate.[4]  That is, it allows removal of state

6    claims when a federal statute *wholly displaces the state-law cause of action*, whereas ordinary

7    preemption operates to dismiss state claims on the merits.  *Smith v. GTE Corp.*, 236 F.3d 1292,

8    1313 (11th Cir. 2001) (emphasis added).  Presently before the court is the issue of  "ordinary

9    preemption" in the context of defendants' motion to dismiss.  Nonetheless, the court finds

10   instructive the analysis of "complete preemption" in the above-cited cases, since defendants do

11   in fact seem to argue that the FCA wholly displaces state-law causes of action and, in essence,

12   that a plaintiff can never maintain a state law tort claim against any defendant whose activities

13   are regulated by the FCC.  *See*, Motion to Dismiss, at 9:18-23.

14        This court rejects that interpretation of the FCA, just as most other courts have.  *See*, *In

15   re Wireless*, 327 F. Supp. 2d at 565 (citing numerous cases concluding that section 332 of the

16   FCA does not provide removal jurisdiction under a complete preemption theory).  The court

17   finds the above-cited cases and the FCC ruling compelling.  Especially convincing is those

18   courts' interpretation of the savings clause of the FCA.  That clause specifically preserves

19   remedies available at common law.  47 U.S.C. § 414.  Although certain provisions of the FCA

20   do preempt some state law claims, the provisions cited by defendants in their motion to dismiss

21   do not preempt what appear to be, if properly plead, personal injury claims alleged by plaintiffs.

22   Accordingly, the court finds that plaintiffs' state law claims – to the extent they can be discerned

23   – are not preempted wholesale by the FCA.  For this reason, plaintiffs are granted leave to amend

24

25        [4]  The court recognizes the continuing obligation of a federal court to, *sua sponte*, assure
     itself of its own jurisdiction.  If, after amendment to the complaint, it becomes clear that there is
26   not complete preemption the court must revisit the motion to remand.

1  to state a personal injury cause of action for negligence if, in fact, they can actually do so.  The

2  court takes no position on the factual merit of any such claim.

3      D.  Primary Jurisdiction:

4      Defendants assert that, to the extent these "claims" can be construed as claims regarding

5  defendants' alleged non-compliance with FCC standards regulating RF emissions (or as

6  challenging the standards themselves), then those claims should first be brought before the FCC

7  under the doctrine of primary jurisdiction.

8      "The doctrine of primary jurisdiction 'is a prudential doctrine under which courts may,

9  under appropriate circumstances, determine that the initial decisionmaking responsibility should

10  be performed by the relevant agency rather than the courts.'" *Davel Communs., Inc. v. Qwest*

11  *Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (quoting *Syntek Semiconductor Co. v. Microchip*

12  *Tech. Inc.*, 307 F.3d 775, 780 (9th Cir. 2002)).  "The doctrine is applicable whenever the

13  enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that

14  are within the special competence of an administrative body.  The doctrine does not, however,

15  require that all claims within an agency's purview be decided by the agency." *Davel*, 460 F.3d at

16  1086.

17      To determine whether the doctrine applies, courts generally look to four factors.  The

18  doctrine applies where there is: "(1) the need to resolve an issue that (2) has been placed by

19  Congress within the jurisdiction of an administrative body having regulatory authority (3)

20  pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme

21  that (4) requires expertise or uniformity in administration."  *Davel*, 460 F.3d at 1086-87

22  (quoting *General United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)).

23  "Where an issue falls within an agency's primary jurisdiction, the district court enables "referral"

24  of the issue to the agency. . . . In practice, it means that a court either stays proceedings, or

25  dismisses the case without prejudice, so that the parties may pursue their administrative

26  remedies."  *Davel*, 460 F.3d at 1087.

1    Even with this instruction from the Ninth Circuit, this court is unable to determine at this

2    stage whether or not plaintiffs' claims truly do fall within the FCC's primary jurisdiction, and

3    second, which, if any, of those claims would be appropriate for administrative review and/or

4    remedies.  The court finds defendants' argument in this vein premature.  As defendants point out,

5    and as this court acknowledges, plaintiffs' claims "provide minimal information" as to what

6    violations defendants allegedly committed and what, if any, relief plaintiffs are entitled to as a

7    result of those violations.  Based on this court's review of the complaint, it appears that the

8    overall gist of plaintiffs' allegations point to state law tort claims for personal injury, rather than

9    challenges to the efficacy and enforcement of FCC regulations.  Indeed, the court will permit

10   plaintiffs to amend their complaint to state a claim, and if the amended complaint fails to allege

11   any federal claims, the court may have to reconsider whether removal jurisdiction truly exists in

12   this case.

13   IV.    <u>CONCLUSION</u>

14   Plaintiffs' six causes of action are too poorly plead to discern precisely what cause of

15   action is being asserted in any given claim, whether the claims are redundant, or instead, whether

16   there is some genuine factual or legal basis for breaking them out into separate causes of action.

17   Accordingly, they are dismissed.  As for leave to amend, as discussed, the court finds

18   unpersuasive defendants' arguments that all state law claims are necessarily preempted.  Setting

19   aside the redundant cause of actions and the poorly plead claims, the crux of the plaintiffs'

20   complaint is an allegation that the defendants "failed to protect the safety of [plaintiffs]" who

21   live and work near the Likely Mountain Tower, and that plaintiffs were injured as a result of

22   exposure to radiation emitted from the defendants' equipment.  Complaint, at ¶ 4.  The complaint

23   vaguely  alleges violations of state and federal statutes and regulations, but a liberal reading of

24   the complaint is that plaintiffs are trying to use these references to establish a standard of care

25   that has been breached (i.e., to create a rebuttable presumption of negligence under the doctrine

26   of negligence per se).  If clarified through an amended complaint, plaintiffs might not be

1   asserting a private right of action under any particular statute or regulation at all.  Although the

2   body of the complaint is unclear in that regard, the complaint is expressly captioned as a

3   "complaint for negligence per se."  Whether plaintiffs can articulate a cause of action for

4   personal injury based on negligent conduct resulting in radiation exposure that, in fact, caused

5   injuries, remains to be seen.

6         The court is similarly unpersuaded by defendants' argument that many of plaintiffs' so-

7   called federal claims fall within the doctrine of primary jurisdiction and should therefore be

8   dismissed or stayed to allow the FCC to consider them.  It is not clear at all that plaintiffs are

9   even asserting any federal cause of action.  Review of the complaint suggests  that plaintiffs

10  really seek to prosecute personal injury claims under state law tort theories, but until the

11  complaint is amended the court cannot be entirely certain of that given plaintiffs' numerous,

12  unexplained citations to various federal laws and regulations.  In addition, because the complaint

13  is so poorly plead, the court is unable to meaningfully apply some of defendants' proffered bases

14  for dismissal to all of plaintiffs' claims.  Based on this, and the fact that it is unclear precisely

15  which claims plaintiffs wish to pursue, the claims are dismissed with leave to amend.

16        Plaintiffs are advised that the court cannot refer to a prior pleading in order to make the

17  amended complaint complete.  Local Rule 15-220 requires that an amended complaint be

18  complete in itself without reference to any prior or superseded pleading.  This is because, as a

19  general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375

20  F.2d 55, 57 (9th Cir. 1967).  Once an amended pleading is filed, the original pleading no longer

21  serves any function in the case.

22        Any amended complaint must allege sufficient facts to support the conclusion that

23  plaintiffs have a cognizable claim against the defendants.  Plaintiffs must allege specific facts to

24  demonstrate defendants' liability, if any, under each cited law or regulation, in addition to

25  demonstrating how each cited law gives rise to a cause of action against defendants.  As

26  explained herein, it is not the function of the court to examine a long list of legal citations to

19

1    determine if a cause of action can be construed therefrom.

2         In accordance with the forgoing, IT IS ORDERED that:

3         1.  Plaintiffs' requests for judicial notice are DENIED;

4         2.  Each and every cause of action is DISMISSED for failure to state a claim.  Plaintiffs

5    are granted leave to file an amended complaint, which shall comply with Fed. R. Civ. P. 8; and,

6         3.  Plaintiffs shall have thirty days from the date of service of this order to file an

7    amended complaint.  Failure to timely file an amended complaint will result in a

8    recommendation that this action be dismissed.

9    DATED:  January 9, 2007.

10

11                              EDMUND F. BRENNAN
12                              UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26