IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARY A. JASSO, et al.,

Plaintiffs, No. CIV S-05-2649 GEB EFB PS

vs.

CITIZENS TELECOMMUNICATIONS COMPANY OF CALIFORNIA, INC., et al.,

FINDINGS & RECOMMENDATIONS

Defendants.

_________________________________/

This action, in which all plaintiffs are proceeding pro se, was referred to the undersigned on August 28, 2006. *See* E. D. Cal. L. R. 72-230(c)(21); 28 U.S.C. § 636(b)(1). The matter is currently before the court on defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and pursuant to the doctrine of primary jurisdiction.[1] The matter was heard on April 18, 2007. Having considered

[1] The lead motion was filed by defendants Modoc RSA Limited Partnership d/b/a Verizon Wireless and Cellco Partnership d/b/a Verizon Wireless (collectively referred to herein as "Verizon"). Plaintiffs have named eight other defendants: Citizens Telecommunications Company of California, Inc.; Sierra Pacific Power Company; Valley Industrial Communications, Inc. (erroneously sued as Valley Industrial Telecommunications, Inc.); Alturas Ranches, LLC; Union Pacific Railroad Company; United States Cellular Corporation; California Rural Services Area #1; and, Surprise Valley Electrification Corporation. These defendants join in Verizon's

the moving and opposing papers and the oral arguments, the court issues the following findings and recommendations.

**I. BACKGROUND**

Defendants removed this action from California state court on December 30, 2005. In an order dated February 10, 2006, the court denied plaintiffs' motion to remand the action to state court, noting the numerous federal statutes and regulations cited by plaintiff in the original complaint.[2] On January 9, 2007, the court dismissed the complaint pursuant to Fed. R. Civ. P. 8, but granted plaintiffs leave to file an amended complaint. Plaintiffs timely filed an amended complaint, which complied with Rule 8 and clarified that their claims sounded primarily in state tort law.

Plaintiffs are former employees and family members of employees who worked seasonally for the California Department of Forestry and Fire Protection at the "Likely Mountain Lookout" site in Lassen County, California ("Likely Mountain"). Plaintiffs allege that they have sustained various injuries from exposure to radiation emitted from defendants' telecommunication operations at Likely Mountain. First Amended Complaint ("FAC"), at ¶ 20. Defendants are various cellular telephone businesses that own, use and/or lease the telecommunications facilities located there. Plaintiffs describe the facilities as comprised of telecommunications towers, buildings, antennae, microwave dishes, and cellular panels (referred to collectively herein as "the facility"). FAC, at ¶ 18. Plaintiffs allege that defendants failed to comply with various federal regulations concerning the construction and maintenance of the facility, and that the activities conducted at the facility are ultrahazardous in nature. FAC, at ¶¶ 53-59. They allege that beginning around May 2000, they suffered significant radiofrequency and microwave radiation exposure, resulting in numerous bodily injuries, including cancer and

---

motion.

[2] This motion was denied by Magistrate Judge Peter A. Nowinski (ret.); the action was later reassigned to the undersigned on August 28, 2006.

brain damage. FAC, at ¶¶ 40, 41, 28.

Plaintiffs allege three causes of action: (1) a state law claim of negligence per se, premised on defendants' alleged failure to comply with Federal Communications Commission ("FCC") regulations regarding radio frequency ("RF") emissions; (2) a state law claim of strict liability for ultrahazardous activities; and, (3) liability pursuant to 47 U.S.C. § 206 of the Federal Communications Act ("FCA"). Section 206 of the FCA makes a common carrier liable to an injured party if the common carrier does anything prohibited (or fails to do something required) by that statute.[3]

**II. REMAND**

It appears from plaintiffs' opposition papers that they again request the court to remand this action to state court. The request is procedurally improper. It is buried in plaintiffs' opposition to the motion to dismiss, and not made by separate motion. Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opp'n."), at ¶ 47; *See* 28 U.S.C. § 1447(c). However, even if properly made, the request must be denied.

The basis for the request is not clear. Plaintiffs emphasize the predominance of their state law claims, implying that federal subject matter jurisdiction no longer exists in this action. *See* Opp'n., at ¶¶ 44-47. The problem with plaintiffs' argument is that they have persistently included a federal statutory cause of action in their complaint.

Pursuant to section 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

---

[3] The FCA defines "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this Act; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier." 47 U.S.C. § 153(10). Defendants do not dispute that they qualify as common carriers as defined under the Act.

"In determining the presence or absence of federal jurisdiction, we apply the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Calif. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

Here, despite the apparent predominance of plaintiffs' state law claims, plaintiffs explicitly seek relief pursuant to 47 U.S.C. § 206. *See* FAC, at ¶¶17, 59; *Id.*, at 18:16-21 (alleging liability and jurisdiction pursuant to 47 U.S.C. § 206, and seeking damages under that provision). Plaintiffs were given the opportunity to clarify exactly what claims they were asserting and they specifically included in their amended complaint a claim for damages under this federal statute. Thus, whatever question there may have been under the prior ambiguous complaint, plaintiffs' amended complaint has clarified that they do, indeed, include a federal cause of action. Therefore, under the well-pleaded complaint rule, plaintiffs' complaint raises a federal question under § 206, and removal is appropriate here. Accordingly, the court recommends that the request for remand be denied.

## III. MOTION TO DISMISS

Defendants argue that plaintiffs' state law claims are preempted by federal law and fail to state a claim, and, alternatively, that the court should refer this matter to the FCC pursuant to the doctrine of primary jurisdiction.

### A. Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires a complaint to include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (May 21, 2007) (citing *Conley v. Gibson*, 355 U.S. 41 (1957)). "While a complaint attacked by Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* (citations omitted).

Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal may be based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint. *Hosp. Bldg. Co. v. Rex. Hosp. Trs.*, 425 U.S. 738, 740 (1976); *Church of Scientology of California v. Flynn*, 744 F.2d 694 (9th Cir. 1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiffs' favor. *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In a case where plaintiff is proceeding pro se, the court has an obligation to construe the pleadings liberally. *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc). However, the court's liberal interpretation of a pro se complaint may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

**B. Analysis**

**1. Stating a Claim for Ultrahazardous Activity**

As discussed below, defendants move to dismiss primarily on the basis of federal preemption. However, they also argue that plaintiffs cannot state a strict liability ultrahazardous activity claim because cellular telephones (which, to operate, require wireless service facilities

like the one at issue in this case) are ubiquitous.

Although it may seem counter-intuitive, whether an activity is ultrahazardous is primarily a question of law. *Edwards v. Post Transp. Co.*, 228 Cal.App.3d 980, 983 (Cal. Ct. App., 4th Dist., 1991). Yet, the case law is not entirely consistent in this regard. As discussed below, factual issues intertwine in the analysis. An activity is ultrahazardous if it (1) necessarily involves a risk of serious harm to the person, land or chattels of others which cannot be eliminated by the exercise of the utmost care, and (2) is not a matter of common usage. *Id.*

"Six factors are to be considered in determining whether an activity is abnormally dangerous. They are: (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes." *Id.*

One can hardly dispute defendants' argument that cellular telephone use appears to be ubiquitous. Whether that conclusively defeats plaintiffs' ability to demonstrate that an activity meets the definition of "ultrahazardous" is another matter. While cellular telephones may be in common usage, those are not the devices at issue in this case. Rather, plaintiffs' claims center around the alleged dangers of cellular telecommunication transmission facilities, such as the one located at Likely Mountain. Moreover, the legal issue of whether an activity is ultrahazardous is, in part, enough of a factual question that the California courts have held that it is not appropriately determined on a motion seeking dismissal for failure to state a claim. *Travelers Indem. Co. v. City of Redondo Beach*, 28 Cal.App.4th 1432, 1444 (Cal. Ct. App. 1994) ("Due to the interplay of the various factors, it is impossible to define abnormally dangerous activities. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability from the harm that results from it, even though it is carried on with all reasonable care. . . Thus, by its

very nature, the issue of whether an activity is ultrahazardous cannot be decided on demurrer.").[4] Likewise, Rule 12(b)(6) is not a proper avenue for testing plaintiffs' evidence in this regard. Rather, the validity of plaintiffs' allegations of an ultrahazardous activity is properly tested under Rule 56 standards, whereby it may be determined if plaintiffs can offer the evidence necessary to prove the claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 252 (1986). Accordingly, the motion to dismiss on this ground must be denied.

**2. <u>Federal Preemption of Ultrahazardous Claims</u>**

Plaintiffs allege that defendants are engaged in the "ultrahazardous activity of radio frequency and microwave telecommunications operations at [Likely Mountain]" and are responsible for the injuries suffered by plaintiffs as a result of those activities. FAC, at ¶ 53. Defendants argue that this claim is preempted by federal law under both "conflict" and "express" preemption.

"The Supremacy Clause of the Constitution provides that the laws of the United States 'shall be the supreme Law of the Land[.]'" *TOPA Equities, Ltd. v. City of L.A.*, 342 F.3d 1065, 1069 (9th Cir. 2003) (quoting U.S. Const. art. VI). Federal preemption is rooted in this provision of the Constitution and can arise in three different contexts: (1) "express preemption – where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption – where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption – where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citing *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000)) (internal citations

---

[4] "The demurrer is the procedural equivalent, under California law, to a Rule 12(b)(6) motion to dismiss." *Acebey v. Shearson Lehman Bros*., 1993 U.S. Dist. LEXIS 19659, at * 17, n.10 (C.D. Cal. June 4,1993).

omitted); *United States v. 4,432 Mastercases of Cigarettes, More Or Less*, 448 F.3d 1168, 1189 (9th Cir. 2006).

Where a state law claim is preempted by federal law, the claim fails as a matter of law and is properly dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002); *Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 956 (N.D. Cal. 2004) (citing *Kent v. Daimlerchrysler Corp*., 200 F. Supp. 2d 1208, 1212 (N.D. Cal. 2002)).

**a. <u>Express Preemption</u>**

"Express preemption occurs when Congress enacts a statute that expressly commands that state law on the particular subject is displaced." *4,432 Mastercases of Cigarettes*, 448 F.3d at 1189 (citing *Gadda v. Ashcroft*, 377 F.3d 934, 944 (9th Cir. 2004)). Defendants urge that sections 332(c)(7)(B)(iv) and 332(c)(3)(A) of the FCA expressly preempt plaintiffs' ultrahazardous activity strict liability claims.

Section 332(c)(7)(B)(iv) of the FCA provides that:

> No state or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

47 U.S.C. § 332(c)(7)(B)(iv). Defendants argue that a determination under state law that such facilities are "ultrahazardous" would be tantamount to impermissible state regulation in contravention of this statute.

Defendants also cite section 332(c)(3)(A), which provides in relevant part, that "no state or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service. . . ." Defendants argue that imposing strict liability on the operators of wireless service facilities would amount to a state-imposed restriction on entry into the wireless services market.

These provisions limit the states' authority to regulate certain aspects of commercial mobile services (including "the placement, construction, and modification of personal wireless service facilities" and "the entry of or the rates charged by any commercial . . . or private mobile service"). However, the scope of these limitations is not as clear or sweeping as defendants' argument suggests. It is clear, however, that these provisions preempt only certain areas of state law, and not *all* state laws that might have some effect on commercial mobile services. *Pinney v. Nokia*, 402 F.3d 430, 458 (4th Cir. 2005).

For example, section 332(c)(3)(A) expressly prohibits states from regulating "the entry of or the rates charged by" wireless service providers, but explicitly provides that states may still regulate "the other terms and conditions of commercial mobile service." *Id.* (quoting 47 U.S.C. § 332(c)(3)(A)). Furthermore, section 332(c)(7)(B)(iv) can be read as "preserv[ing] a good measure of the states' authority over decisions regarding 'placement, construction, and modification of personal wireless service facilities.'" *Id.* (quoting 47 U.S.C. § 332(c)(7)(B)(iv)). That is, this provision seems to impliedly permit states to regulate the "placement, construction, and modification of personal wireless service facilities" on bases other than "the environmental effects of radio frequency emissions." 47 U.S.C. § 332(c)(7)(B)(iv).

That the preemptive scope of these provisions is not without limitation is further highlighted by the existence of a "savings clause" in the FCA. That clause provides that "nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of the chapter are in addition to such remedies." 47 U.S.C. § 414. It is difficult to reconcile this expressed preservation of state tort law (statutory or common law) with the sweeping interpretation of sections 332(c)(7)(B)(iv) and (c)(3)(A) that is urged here. Indeed, the Fourth Circuit found that this savings clause counseled against any construction of sections 332(c)(3)(A) and 332(c)(7)(B)(iv) that would "create an implicit conflict with state tort law." *Pinney v. Nokia*, 402 F.3d at 458 (holding that plaintiffs' tort law claims for personal injuries arising from use of cellular telephones were not preempted). The savings

clause, in conjunction with the limited preemptive scope of sections 332(c)(3)(A) and 332(c)(7)(B)(iv), led the Court in *Pinney* to conclude that state tort law claims are not preempted.

That rationale applies here. Because the provisions cited by defendants do not "expressly command" the displacement of state strict liability tort claims concerning wireless service facilities, the court finds that such claims are not expressly preempted.

**b. <u>Conflict Preemption</u>**

Defendants also argue that plaintiffs' strict liability "ultrahazardous activity" claim impermissibly conflicts with the FCC's RF radiation regulatory scheme.

As defendants point out, Congress created the FCC for the purpose of regulating wire and radio communications. Defendants argue that because the Congress has delegated authority to the FCC to regulate wireless communications, the FCC has exclusive jurisdiction over any issues related to the safety of RF radiation emitted from wireless facilities. More specifically, defendants assert that plaintiffs' claims that RF radiation emissions are ultrahazardous directly conflicts with the FCC's determinations and regulations regarding acceptable levels of exposure and emissions.

Defendants' argument intertwines reliance on NEPA and related implementing regulations and the FCA and related implementing regulations. This conflating of two separate statutes, each with distinctly different purposes and imposing different obligations, has unnecessarily confused the argument. As discussed below, the FCA and implementing regulations create substantive obligations. NEPA does not.

Indisputably, the FCC was created for the purpose of regulating wire and radio communications. *See* 47 U.S.C. § 151. Likewise, Congress has delegated authority to the FCC to regulate wireless communications. But defendants' argument that the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4335, and the FCC's NEPA regulations impose substantive requirements that preempt state tort law misses the mark. Defendants' Motion to

Dismiss ("MTD"), at 9-10 and 20. The argument fundamentally misapprehends NEPA. NEPA is a procedural statute. It establishes a method of decision making based on an interdisciplinary for analysis and disclosure of impacts from proposed agency actions. It imposes only procedural requirements. It establishes no substantive rights nor dictates any particular result. *Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1355-56 (9th Cir. 1994). The policy behind NEPA is to ensure that an agency has at its disposal all relevant information about environmental impacts of a project before the agency embarks on the project. It requires that an environmental impact statement be prepared for all "major Federal actions significantly affecting the quality of the human environment." *Id.* An environmental assessment is prepared to determine whether a proposal might have significant impacts which would trigger the need for an environmental impact statement. NEPA applies to *all* federal agencies and does not, as defendants suggest, explicitly vest the FCC with exclusive jurisdiction to consider regulatory compliance in the context of state law tort claims.

The more relevant inquiry is the FCA and the FCC's compliance regulations. The FCC does regulate wireless communication devices and operations and its regulations are substantive. They expressly require that licensees and manufacturers of facilities like those in issue here comply with the radio frequency radiation exposure provisions for limiting unwanted emissions. *See* 47 C.F.R. § 27.52. In fairness to defendants, the FCC has scattered the text describing these obligations in two different parts of Title 47 of the Code of Federal Regulations. Thus, to discern the substantive requirements one must follow a circuitous route from Part 27, Subpart C, which imposes substantive standards, to Part 1, Subpart I, the FCC's procedural rules for implementing NEPA. The path ultimately leads back to Part 27, where the obligation for compliance is imposed.

The provision imposing technical standards states: "Licensees and manufacturers are subject to the radio frequency radiation exposure requirements specified in sections 1.1307(b), 2.1091, and 2.1093 of this chapter, as appropriate." 47 C.F.R. § 27.52. This provision requires

operators and manufactures of the subject equipment to follow the criteria identified in section 1.1310, which includes Table 1 that is used to evaluate the environmental impact of human health exposure. 47 C.F.R. § 1.1310. Table 1 of section 1.1310 identifies limits for maximum permissible exposure. The note to section 1.1310 states that "[t]hese limits are generally based on recommended exposure guidelines published by the National Council on Radiation Protection and Measurements." Section 1.1310, in turn, provides that this table shall be used to perform the NEPA analysis required by section 1.1307 for preparing an Environmental Assessment. As noted previously, NEPA imposes no substantive requirements.[5] However, to complete the loop, the agency has provided in section 27.52 that applicants for permits to operate regulated equipment must provide "a statement confirming compliance with these requirements of both fundamental emissions and unwanted emissions." 47 C.F.R. § 27.52. This section also requires production of technical information, when requested by the agency, to show the basis for the statement. *Id.*

Thus, while NEPA is irrelevant to the preemption question, the FCC's imposition of rules mandating compliance with specific emission criteria is of paramount importance. Setting NEPA aside, the FCC has promulgated regulatory guidelines for RF radiation emitted from cellular communication facilities. 47 C.F.R. § 27.52, *See EMR Network v. FCC*, 391 F.3d 269, 271 (D.C. Cir. 2004) (citing *Guidelines for Evaluating the Environmental Effects of Radiofrequency Radiation*, 12 F.C.C.R. 13494, 13505 (1997)) (hereafter "*Guidelines for Evaluating*"). In *Guidelines for Evaluating*, the FCC reviewed its RF radiation rules and affirmed the exposure limits it had previously adopted. The FCC concluded that these guidelines "provide a proper balance between the need to protect the public and workers from exposure to

---

[5] Section 1.1310 is a NEPA implementation regulation that states how a particular impact is to be evaluated in a NEPA document. Specifically, the NEPA analysis must use Table 1 values for analyzing "maximum permissible exposure" (MPE) of humans to RF radiation depending on different criteria such as frequency range and electric field strength. *See* 47 C.F.R. 1.1310. It is the incorporation of these values in the Part 27 regulations, and specifically, the requirements in section 27.52 that imposes substantive obligations.

potentially harmful RF electromagnetic fields and the requirement that the industry be allowed to provide telecommunications services to the public in the most efficient and practical manner possible." *Guidelines for Evaluating*, 12 F.C.C.R. at 13496. Herein lies the conflict. Were the court to permit plaintiffs to pursue their strict liability claim, defendants could be subject to liability without regard to whether the facility in this case complies with the FCC's adopted RF exposure requirements. *See* 47 C.F.R. § 27.52. In short, plaintiffs pursue a claim of liability that does not depend on negligence and fails to take account of whether defendants complied with a federal standard.

This FCC ruling highlights the conflict between the FCC's delegated authority to establish RF radiation guidelines and limits, and plaintiffs' attempt to establish that wireless facilities like the one at Likely Mountain are ultrahazardous. "[U]nder conflict preemption, Congress impliedly preempts state law when it actually conflicts with federal law." *Pinney v. Nokia*, 402 F.3d 430, 453 (4th Cir. 2005) (citing *Hilsborough County v. Automated Med. Lab.*, 471 U.S. 707, 713 (1985)). A state law can be set aside by conflict preemption "when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pinney*, 402 F.3d at 457 (citing *Hillsborough*, 471 U.S. at 713)).

In *Pinney*, the Fourth Circuit ultimately found no preemption. It concluded that Congress enacted section 332 of the FCA "to ensure the availability of a nationwide network of wireless service coverage, more specifically, to develop the infrastructure necessary to provide wireless service." *Id.*, at 457. The court therefore did not infer from section 332 any congressional intent to achieve "preemptive national RF radiation standards for wireless telephones." *Id.*, at 457. But the principles of conflict preemption described therein have application here and yield the result that this claim is preempted.

This case differs factually from *Pinney* in that equipment in issue here is not wireless telephones. Rather, it consists of the wireless facilities explicitly described in section

332(c)(7)(B)(iv). That section establishes a federal "standard," and in essence a standard of care, for cellular service providers that operate wireless service facilities. That standard is measured by compliance with the FCC's regulations concerning RF radiation emissions, 47 C.F.R. § 27.52, which adopts the criteria in sections 1.1307(b) and 1.1310. Assuming defendants were found to be in compliance with these FCC regulations, a determination that their operation of the facility at Likely Mountain was "ultrahazardous" would be in direct conflict with the FCC's regulations setting maximum, "safe" levels of exposure. Such a determination would undo the FCC's balancing "between the need to protect the public and workers from exposure to potentially harmful RF electromagnetic fields and the requirement that the industry be allowed to provide telecommunications services to the public in the most efficient and practical manner possible." *Guidelines for Evaluating*, 12 F.C.C.R. at 13496.

Although this court has found no case squarely addressing preemption of a strict liability claim for injuries allegedly caused by RF radiation, it has found two analogous cases in the context of nuclear energy. *See Bohrmann v. Maine Yankee Atomic Power Co.*, 926 F. Supp. 211, 221 (D. Me. 1996) ("Plaintiffs' claim pursuant to a strict liability theory is inconsistent with the federal regulatory scheme because Plaintiffs could recover pursuant to such a claim without first establishing that Defendant breached a federally imposed standard of care."); *McLandrich v. So. Cal. Edison Co.*, 942 F. Supp. 457, 465 n.7 (S.D. Cal. 1996) ("The Court finds that applying the 'ultrahazardous activities' doctrine here would be clearly inconsistent with the Price-Anderson Act, as it would make nuclear power plant licensees strictly liable without the 'safe haven' provided by the dose limits regulations."). The reasoning of both cases applies here. If the strict liability claim were permitted to proceed, plaintiffs could potentially recover pursuant to such a claim without first establishing that the defendants breached a federally-imposed standard of care; i.e., the FCC guidelines regarding acceptable levels of RF radiation emissions. Because plaintiffs' strict liability theory of recovery conflicts with the FCC's federal regulatory scheme in this way, the claims must be dismissed as barred by conflict preemption.

**3. Primary Jurisdiction**

The court next addresses plaintiffs' claim brought pursuant to 47 U.S.C. § 206 and their state law cause of action for negligence per se. Defendants argue that a determination of these claims necessarily involves technical issues that are within the expert province of the FCC. They therefore ask the court to refer this case to the FCC pursuant to the doctrine of primary jurisdiction, and to dismiss or stay these claims pending such referral.

Referral is a term of art. It "means that a court either stays proceedings, or dismisses the case without prejudice, so that the parties may pursue their administrative remedies." *Davel Communs., Inc. v. Qwest Corp.*, 460 F.3d 1075, 1086 (9th Cir. 2006) (quoting *Syntek Semiconductor Co. v. Microchip Tech. Inc.*, 307 F.3d 775, 782 n.3 (9th Cir. 2002)). "There is no formal transfer mechanism between the courts and the agency; rather, upon invocation of the primary jurisdiction doctrine, the parties are responsible for initiating the appropriate proceedings before the agency." *Davel*, 460 F.3d at 1086.

> The primary jurisdiction is a prudential doctrine whereby courts, under appropriate circumstances, determine that the initial decision making responsibility should be performed by the relevant agency rather than the courts. The doctrine is applicable whenever the enforcement of a claim subject to a specific regulatory scheme requires resolution of issues that are within the special competence of an administrative body.

*Id.* (citations omitted).

In determining whether to apply the doctrine of primary jurisdiction, courts in this Circuit traditionally look to four factors: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration." *Davel*, 460 F.3d at 1086-87 (citing *United States v. Gen. Dynamics Corp.*, 828 F.2d 1356, 1362 (9th Cir. 1987)).

////

////

**a. Negligence Per Se Claim**

Under California law, negligence may be presumed if a plaintiff establishes the following elements: (1) the defendant violated a statute or rule of a public entity; (2) the violation was the proximate cause of the plaintiff's injury; (3) the injury resulted from an occurrence the nature of which the statute was designed to prevent; and (4) the plaintiff suffering the injury was among the class of persons for whose protection the statute was adopted. *Galvez v. Frields*, 88 Cal.App.4th 1410, 1420 (Cal. Ct. App. 2001). While the first two elements are normally questions for the trier of fact, the third and fourth elements are determined by the court as a matter of law. *Id*.

Here, plaintiffs "negligence per se" claim alleges that their injuries are the proximate result of defendants' alleged non-compliance with various FCC regulations and guidelines, including FCC OET Bulletin 65, which sets forth the maximum permitted exposure (MPE) levels to which wireless antennae must comply. FAC, at ¶¶ 44-49.

Defendants argue that this claim invokes the FCC's primary jurisdiction because it raises the technical issues of compliance and enforcement of FCC regulations concerning RF radiation emissions. Defendants assert that such technical matters are within the province of the FCC, which they argue, is best situated to determine defendants' alleged non-compliance. Defendants argue that the court and/or a jury would be ill-equipped to determine issues such as the "propagation of radio energy, the dispersal of such energy over long distances and the performance of defendants' antennae – standards the FCC has set forth in 47 C.F.R. §§ 1.1305, 1.1307(b), 1.130, and OET Bulletin 65." MTD, at 20.

Again citing NEPA, 42 U.S.C. §§ 4321-4335, defendants restate their argument that determining and enforcing compliance with FCC regulations are matters Congress has placed with the FCC's jurisdiction. As discussed above, NEPA does nothing of the kind. It is a procedural statute, imposing only procedural requirements, and establishes no substantive rights nor dictates any particular result. *Salmon River Concerned Citizens*, 32 F.3d 1355-56. It clearly

does not vest the FCC with exclusive jurisdiction to consider regulatory compliance in the context of state law tort claims.

However, as discussed, the relevant inquiry is the FCC's compliance regulations and the FCA. The FCC does regulate whether wireless communication devices and operations are in compliance with its rules. *See* 47 C.F.R. §§ 27.52 (Imposing the emission levels described in sections 1.1307(b), 1.1310); OET Bulletin 65, Appendix A; *In the Matter of Canyon Area Residents for the Environment Request for Review of Action Taken Under Delegated Authority on a Petition for an Environmental Impact Statement*, 14 F.C.C.R. 8152, 8153 (¶ 5) (1999). While the FCC does have the authority and expertise to determine compliance with its admittedly complex and technical regulations, it has no authority over tort claims and no particular expertise on California tort law. Whether a federal standard has been breached is but one of the elements in question. The primary jurisdiction doctrine does not "*require* that all claims within an agency's purview be decided by the agency. Nor is the primary jurisdiction doctrine intended to secure expert advice for the courts from regulatory agencies every time a court is presented with an issue conceivably within the agency's ambit." *Davel*, 460 F.3d at 1086 (citations omitted) (emphasis added). If it were, it would be the rare NEPA case, indeed, that could ever be decided by a court without referral to some regulatory agency. Virtually every NEPA case, and nearly every other case brought under federal environmental statutes, involves technical issues falling within one or more regulatory agency's ambit.

In *Davel*, the court applied the doctrine of primary jurisdiction to refer to the FCC a dispute regarding the interpretation of a "waiver order" issued by the agency. *See Davel*, 460 F.3d at 1082-83. The waiver order granted a limited waiver of the new services test rate-filing requirement for intrastate payphone service rates, and contained somewhat ambiguous language regarding reimbursement for payphone service providers. *Id.* The court determined that for the order's reimbursement requirement to be applied uniformly, the FCC should construe its scope. *Id.*, at 1090.

Here, the parties are not disputing the interpretation of an order promulgated by the FCC. Rather, plaintiffs are alleging that defendants have not complied with various FCC regulations, and on that basis assert a state law tort claim for negligence. The issue of compliance, although quite clearly technical, is ultimately factual in nature and applies only to these particular defendants' conduct. Defendants' argument that the uniformity of the FCC's regulatory scheme would be disrupted by adjudication in this court is therefore unavailing. Whether or not these defendants should be found negligent for non-compliance is not an issue within the technical expertise of the agency. Rather, that is a classic question of tort law well within the expertise of courts. The relevance of the regulations is simply to establish a standard of care, which if breached, would create a rebuttable presumption of negligence. A finding that these particular defendants did not comply with standards for protecting human health required by the regulations would not result in a disparate interpretation or application of the regulations.

Finally, plaintiffs appear to persist in a claim that defendants did not comply with NEPA requirements to prepare environmental impact statements in certain circumstances. The requirement is on the agency in the first instance but the agency's NEPA regulations shift certain analytical functions to the permit applicant. Lest the plaintiffs misunderstand these findings and recommendations, the court expressly finds that plaintiffs cannot state a claim for damages under NEPA. "NEPA does not provide a private cause of action for violations of its provisions." *Salmon River Concerned Citizens*, 32 F.3d at 1353, n.13.

In sum, the court finds that the issues presented by plaitniffs – the factual question of whether defendants are liable under a tort theory of negligence per se for non-compliance with a standard of care emanating from FCC regulations – is not an issue that has "been placed by Congress within the jurisdiction" of the FCC, nor is it one that requires (at present) "expertise or uniformity in administration." *Davel*, 460 F.3d at 1086-87 (citations omitted). Whether plaintiffs can prove the elements of their claim is another matter. But it is a question that can readily be resolved either under Rule 56 of the Fed. R. Civ. P., or, if necessary, at trial.

**b. Section 206 Claim**

Defendants assert the same arguments for referral to the FCC with regard to plaintiffs' claim brought under 47 U.S.C. § 206. Defendants argue that this claim, like plaintiffs' negligence per se claims, depends upon the proper construction of the federal regulations and determinations regarding compliance. For the reasons discussed above, the court recommends against application of the primary jurisdiction doctrine at this time with regard to this claim as well.

**IV. CONCLUSION**

In accordance with the foregoing, IT IS RECOMMENDED that defendants' motion to dismiss be granted in part and denied in part, as follows:

1. Defendants' motion to dismiss be granted as to plaintiffs' ultrahazardous claims on the basis of conflict preemption;

2. Defendants' motion to dismiss under the primary jurisdiction doctrine be denied as to plaintiffs' claims for negligence per se and for violations of 47 U.S.C. § 206, and that such claims not be referred to the FCC at this time; and,

3. Plaintiffs' request for remand be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within ten (10) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are

////

////

////

////

advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: July 30, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE