1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   MARY A. JASSO, et al.,

11            Plaintiffs,                    No. CIV S-05-2649 GEB EFB PS

12        vs.

13   CITIZENS TELECOMMUNICATIONS        FINDINGS AND RECOMMENDATIONS
     COMPANY OF CALIFORNIA, INC., et al.,
14
             Defendants.
15   _____/

16        Defendants' motion for summary judgment was submitted for decision on the papers by

17   order of this court entered July 9, 2008.[1]  For the following reasons, the court recommends that

18   the motion be granted.

19   BACKGROUND

20        This is one of several actions, based on the same set of facts, filed by plaintiffs in state

21   and federal court.  Defendants removed this action from the Lassen County Superior Court on

22   December 30, 2005.  On January 9, 2007, this court dismissed plaintiffs' complaint for failure to

23   state a claim, and accorded plaintiffs leave to file an amended complaint, which they filed on

24
          [1] This case, in which the plaintiffs are proceeding *in propria persona*, is referred to the
25   undersigned under Local Rule 72-302(c)(21), pursuant to 28 U.S.C. § 636(b)(1).  This case is
     related to *Illa L. Garcia, et al. v California Department of Forestry and Fire Protection, et al.*,
26   No. Civ. S-07-2770 GEB EFB PS.

                                          1

February 2, 2007.

Pursuant to their amended complaint, plaintiffs Mary Jasso and Illa Garcia state that they are former employees of the California Department of Forestry and Fire Protection ("CDF") who worked as seasonal lookouts at the "Likely Mountain Lookout" site ("Likely Mountain") in Lassen County, California. Jasso worked seasonally at the site from 1992 to 2002; Garcia worked there from 2000 to 2002. First Amended Complaint ("FAC"), ¶ 24. The additional eleven plaintiffs are family members of Jasso and Garcia who visited or lived with them during their employment at Likely Mountain. FAC at ¶¶ 27, 28. Plaintiffs allege that they sustained injuries as a result of exposure to radiation emitted from defendants' cellular telecommunication facilities and operations at Likely Mountain. FAC at ¶ 20, 18. Defendants are cellular telephone businesses which own, use and/or lease telecommunications facilities located at Likely Mountain. Plaintiffs describe the facilities as telecommunications towers, buildings, antennae, microwave dishes, and cellular panels. FAC at ¶ 18. Plaintiffs allege that defendants have failed to comply with federal regulations concerning the construction, operation and maintenance of their facilities, FAC at ¶¶ 53-59, and as a result plaintiffs have suffered numerous bodily injuries, including cancer, brain damage, and autism.[2] FAC at ¶¶ 40, 41, 28.

The amended complaint sets forth three causes of action: (1) a state law claim of negligence per se, premised on defendants' alleged failure to comply with Federal Communications Commission ("FCC") regulations regarding radiofrequency ("RF") emissions; (2) a state law claim of strict liability for ultrahazardous activities; and, (3) liability pursuant to 47 U.S.C. § 206 of the Federal Communications Act ("FCA"), which authorizes damages for personal injury by a common carrier for conduct violating Chapter 5 of Title 47.

On September 13, 2007, this court granted in part defendants' motion to dismiss plaintiffs' amended complaint. The court dismissed plaintiffs' state law ultrahazardous/strict

---

[2] On December 31, 2008, plaintiffs filed a Notice informing the court of the December 1, 2008, death of plaintiff Benjamin G. Garcia, husband of plaintiff Illa Garcia. *See* Dckt. No. 209.

liability claim on the basis of conflict preemption by the FCC's regulatory guidelines. However, the court denied defendants' motion, made pursuant to the primary jurisdiction doctrine, as to plaintiffs' state law claim for negligence per se and alleged violation of 47 U.S.C. § 206. The court declined to defer to FCC jurisdiction on these matters on the ground, *inter alia*, that federal regulations establish only the relevant standard of care in assessing a negligence claim; the remaining analysis relative to causation necessarily lies with the courts. *See* Order filed September 13, 2007, adopting Findings and Recommendations filed July 30, 2007.

All defendants filed answers to the amended complaint on October 31, 2007.

On April 7, 2008, defendants Modoc RSA Limited Partnership dba Verizon Wireless, and Cellco Partnership dba Verizon Wireless ("Verizon"), filed the instant motion for summary judgment, which has been joined by defendants Sierra Pacific Power Company, United States Cellular Corporation, California Rural Services Area #1, Union Pacific Railroad Company, Citizens Telecommunications Company of California, Inc., Surprise Valley Electrification Corporation, Valley Industrial Communications, Inc. and Alturas Ranches LLC.

Defendants' motion is premised on defendants' assertion that plaintiffs' claims are barred by collateral estoppel as a result of two decisions rendered by the Lassen County Superior Court.

Plaintiffs filed an opposition and motion to strike certain evidence proffered by defendants.

LEGAL STANDARDS

A. Summary Judgment

Summary judgment pursuant to Fed. R. Civ. P. 56 avoids unnecessary trials in cases with no disputed material facts. *Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Two steps are necessary. First, according to the substantive law, the court must determine what facts are

material. Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial. *Id.,* at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). The moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must demonstrate that disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial, *T.W. Elec.*, 809 F.2d at 631. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed facts. *Anderson*, 477 U.S. at 248.[3] Conclusory statements cannot defeat a properly supported summary judgment motion. *Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v.American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

---

[3] A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court should grant summary judgment.

B. <u>Collateral Estoppel</u>

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir. 1995). "'[T]he doctrine of collateral estoppel can apply to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action.' *United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170-71 [](1984)." *Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 910 (9th Cir. 1997).

"In determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of collateral estoppel. 28 U.S.C. § 1738; *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481-82(1982)." *In re Bugna*, 33 F.3d 1054, 1057 (9th Cir. 1994). Under California law, the following requirements must be satisfied in order to find collateral estoppel: "1) the issue to be precluded must be identical to that decided in the prior proceeding; 2) the issue must have been actually litigated at that time; 3) the issue must have been necessarily decided; 4) the decision in the prior proceeding must be final and on the merits; and 5) the party against whom preclusion is sought must be [the same as or] in privity with the party to the former proceeding." *People v. Garcia*, 39 Cal.4th 1070, 1077 (2006); *see also Lucido v. Superior Court*, 51 Cal.3d 335, 341 (1990).

<u>EVIDENTIARY ISSUES</u>

Evidence, regardless of form, that may be admissible at trial, may also be considered on summary judgment. *Burch v. Regents of the University of California*, 433 F.Supp. 2d 1110,

1120  (E. D. Cal. 2006) (*citing Celotex*, 477 U.S. at 324).  In a motion for summary judgment based on res judicata or collateral estoppel, "[w]hen the moving party has 'introduce[d] a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action,' there is no need for the entire record of the prior litigation to be submitted into evidence. *Hernandez v. City of Los Angeles*, 624 F.2d 935, 937 (9th Cir. 1980).  *See also Jones v. Gann*, 703 F.2d 513, 515 (11th Cir.1983) (res judicata defense may be raised 'by introducing sufficient information into the record to allow the court to judge the validity of ... the defense')." *Takahashi v. Board of Trustees of Livingston Union School Dist.*, 783 F.2d 848, 850 (9th Cir. 1986).

A. <u>DEFENDANTS' REQUEST FOR JUDICIAL NOTICE</u>

With the exception of Defendants' Exhibit A, discussed *infra*, defendants' request for judicial notice is limited to official court records, including pleadings submitted therein.  The court may judicially notice matters of public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South Bay Beer Distributors*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Additionally, "[m]aterials from a proceeding in another tribunal are appropriate for judicial notice." *Doran v. Aus*, __ F.3d __, 2009 WL 123608, *1 (9th Cir. 2009).  While plaintiffs challenge defendants' construction of, and reliance on, these documents, they do not challenge defendants' request that the documents be judicially noticed.

////
////
////
////
////
////
////
////

6

Accordingly, defendants' request for judicial notice of the documents enumerated below[4]

is granted.

_____

[4] The court judicially notices the following documents (*see* Defendant Verizon's Request for Judicial Notice, Dckt. No. 170-3, Decl. of Todd Noonan, Dckt. No. 170-6, and Appendix of Exhibits, Dckt. Nos. 171 and 172):

1. Defendants' Exhibit D, the October 30, 2007 Order of the Lassen County Superior Court, granting summary judgment in favor of the State of California defendants, specifically, the Department of General Services, Department of Fish and Game, Department of Forestry and Fire Protection, and Highway Patrol. Case No. 41697.

2. Defendants' Exhibit E, the October 31, 2007 Order of the Lassen County Superior Court, granting summary judgment in favor of defendant California Department of Transportation. Case Nos. 41697, 42423, 42424, 42426, 42601, 42602, 42603, 42604, 42605, 42606, 42616.

3. Defendants' Exhibit F, the November 29, 2005 Order of the Lassen County Superior Court, granting the motion of the state defendants to strike plaintiffs' original complaint. Case No. 41697.

4. Defendants' Exhibit G, the Lassen County Superior Court Docket Sheet for Case No. 41697.

5. Defendants' Exhibit H, the originally filed complaint in Lassen County Superior Court Case Nos. 41697, 42197, 42554, 42601, 42426, 42603, 42616, 42423, 42606, 42605, 42424, 42604, 42425, and 42602, dated July 25, 2005.

6. Defendants' Exhibit I, the Second Amended Complaint of Timothy E. Ainslie from Lassen County Superior Court Case No. 42601, dated June 8, 2006.

7. Defendants' Exhibit J, reflecting official records of the California Court of Appeal, Third District, specifically, Case Summary, Docket Sheet, Disposition, and List of Parties and Attorneys from *Jasso v. Department of Forestry, et al.*, Case No. C053793 (Trial No. 41697).

6. Defendants' Exhibit K, reflecting official records of the California Court of Appeal, Third District, specifically, Case Summary, Docket Sheet, Disposition, and List of Parties and Attorneys from *Garcia v. Department of Forestry, et al.*, Case No. C053667 (Trial No. 42425).

7. Defendants' Exhibit L, providing the California Supreme Court Case Summary, Docket Sheet, Disposition, and List of Parties and Attorneys in *Garcia v. Department of Forestry, et al.*, Case No. S153684 (CO No. 53667, 53793).

8. Defendants' Exhibit M, the United States Supreme Court Docket Sheet from *Garcia, et al. v. Department of Forestry, et al.*, Case No. 07-604 (CO No. 53667, 53793).

9. Defendants' Exhibit N, reflecting official records of the California Court of Appeal, Third District, specifically, Case Summary, Docket Sheet, Disposition, and List of Parties and Attorneys from *Jasso v. Superior Court of Lassen County*, CO No. 57462.

10. Defendants' Exhibit O, providing the California Supreme Court Case Summary, Docket Sheet, Disposition, and List of Parties and Attorneys from *Jasso v. Superior Court of Lassen County*, Case No. S159350 (CO No. 57462).

11. Defendants' Exhibit P, a Notice of Related Cases, dated November 15, 2005, and filed by Plaintiffs Mary A. Jasso, et al. in Lassen County Superior Court Case Nos. 41697 and 42197.

12. Finally, although defendants do not make the request, the court judicially notices defendants' later filed Exhibit Y, a copy of plaintiffs' Motion for a Peremptory Writ of Mandate, filed November 28, 2007 in the California Court of Appeals, Third District, Case No. 41697. *See* Decl. of Todd Noonan, Dckt. No. 197.

B.  PLAINTIFFS' MOTION TO STRIKE

Plaintiffs object to the admission of five documents submitted by defendants, three reports of scientific test results, and two supporting declarations.[5]  The grounds for each objection are the same:  "Irrelevant" (citing Cal. Evid. Code §§ 350-351), "Immaterial" (citing Fed. R. Evid. §§ 402-403), and "After the Fact" (Fed. R. Evid. § 407).  *See* Plaintiffs' Objection and Motion to Strike ("Motion to Strike"), Dckt. No. 191, and Plaintiffs' Proposed Order, Dckt. No. 195.

Plaintiffs' objections broadly challenge the substance, veracity and probative value of the scientific documents, and the honesty of the declarants.  Plaintiffs argue that the scientific documents fail to describe the conditions on Likely Mountain during plaintiffs' presence, and that the supporting affidavits are "fraudulent [and] misleading."  Motion to Strike, at p. 2.  Plaintiffs contend that the "acceptance of these allegedly false documents would be a major waste of the court[']s time and would open the defendants to an action of submitting and filing false evidence, collusion, perjury, and bad faith."  *Id.*

Of the challenged documents, defendants seek judicial notice of only Exhibit A, the VanStavern letter setting forth the findings of the FCC, based on testing conducted July 26, 2005 and December 6, 2005.  It appears that defendants seek judicial notice of Exhibit A, but not similar Exhibits B and C (state test results), because the latter are directly authenticated by the Esminger and Williams declarations and, moreover, these test results and declarations were separately submitted by plaintiffs.  *See* Plaintiffs' Exhibits B and C to Decl. of Raymond Singer,

---

[5]  Plaintiffs object to the admission of the following five documents:  (1) Declaration of Richard Williams, Senior Telecommunications Engineer, California Department of General Services, Telecommunications Division (Dckt. No. 170-5); (2) Declaration of Michael D. Ensminger, Associate Telecommunications Engineer, California Department of General Services, Telecommunications Division (Dckt. No. 170-4); (3) FCC tests and surveys conducted July 26, 2005 and December 6, 2005, and set forth in a March 8, 2006 letter from FCC San Francisco District Director Thomas VanStavern to Modoc National Forest personnel (Dckt. No. 171-2, Defendants' Exh. A to Noonan Decl.); (4) State survey test results conducted February 2, 2005 (Dckt. No. 171-3, Defendants' Exh. B to Noonan Decl.); and (5) State survey test results conducted September 20, 2006 (Dckt. No. 171-4, Defendants' Exh. C to Noonan Decl.)

Ph.D., Dckt. No. 193; *see also* Plaintiffs' Exhibits 2-5, 11.  *See, e.g.*, *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987) ("documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment"). Defendants state that they obtained the VanStavern letter from the Lassen County Superior Court in November 2007, as Attachment A to the Declaration of Mr. VanStavern in support of the motion for summary judgment filed by the California Department of Transportation in *Jasso v. Cal. Dept. of Forestry and Fire Protection* (consolidated cases).  *See* Defendants' Request for Judicial Notice, Dckt. No. 170-3, at p. 2.

Defendants' Exhibit A does not present an authentication issue.  Plaintiffs do not contend that the VanStavern letter is anything other than what defendants say it is.  Plaintiffs do not refute that it was submitted in the state court action pursuant to the declaration of Mr. VanStavern; in fact, plaintiffs have submitted a copy of that authenticating declaration (*see* Plaintiffs' Exh. 11).  Rather, as with their challenges to the other test data and declarations, plaintiffs challenge its substance.

Nonetheless, contrary to defendants' assertion that the VanStavern letter meets the requirements for judicial notice pursuant to Federal Rule of Evidence 201(b)(2) ("capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"), *see* Defendants' Memorandum, at p. 15, n. 9, the letter contains neither adjudicative or legislative facts.[6]  The only basis for judicially noticing the letter is to acknowledge that it is what it purports to be, that it was expressly relied upon by the Superior Court, and that it is part of defendants' evidence in support of their motion for summary

---

[6] Adjudicative facts are "usually those facts that are in issue in a particular case," and are generally known or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be disputed." *Korematsu v. United States*, 584 F. Supp. 1406, 1414 (N.D. Cal. 1984).  Legislative facts are "established truths, facts or pronouncements that do not change from case to case but are applied universally." *Id.* at 1414.  These are facts that a court may take notice of when interpreting a statute or considering commercial standards, for example. *Id.*  Under this rubric, the items included in plaintiffs' requests do not qualify as appropriate "facts" to be judicially noticed.

judgment.  Accordingly, defendants' request for judicial notice of their Exhibit A is granted subject to these limitations.

Plaintiffs' broader challenge to the five documents representing the heart of defendants' motion will be overruled.  The substance of this evidence, relied on by the superior court, must be considered in evaluating defendants' collateral estoppel argument.  Plaintiffs' objections, including their allegations of fraud, are properly assessed in the context of determining the appropriateness of summary judgment.  Plaintiffs' challenge to this evidence is one of sufficiency, not admissibility.  *Burch, supra,* 433 F.Supp. 2d at 1119.  "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself. . . . Instead of objecting, parties should simply argue that the facts are not material."  *Id.*

C. <u>UNDISPUTED AND DISPUTED FACTS</u>

Defendants proffer 133 undisputed facts, of which plaintiffs agree upon only sixteen.  These agreed-upon facts reveal very little about this case,[7] and plaintiffs do not offer any others.

_____

[7] Plaintiffs agree that only the following of defendants' proffered facts are undisputed:

No. 6: After plaintiffs Mary Jasso and Illa Garcia were dismissed from the state court case cases, the remaining plaintiffs proceeded to defend against the State's motions for summary judgment.

No. 18.  Plaintiffs May Jasso and Illa Garcia have familial relationships with several of the plaintiffs who were directly subject to the Lassen County court's summary judgment ruling.

No. 22.  Likely Mountain is owned by the United States Department of Agriculture Forest Service and facilities leased to, among others, the State of California, U.S. Cellular, and Citizens' Communications.

No. 23.  The State of California owns and operates two towers and one radio vault at Likely Mountain.

No. 24.  One of the State's towers is a structure with a stairway (with handrail), cab and catwalk used by the California Department of Forestry employees like plaintiffs Mary Jasso and Illa Garcia to spot forest fires.

No. 25.  Mounted on that tower are three microwave antennas operated by the State, which face outward toward the tower.

No. 28.  Also formerly at the site was a metal trailer where CDF employees allegedly lived while working at Likely Mountain.

No. 29.  Two other towers are owned by Citizens Communications (Frontier) and U.S. Cellular on land leased from the U.S. Government.

Plaintiffs' objections to defendants' remaining undisputed facts on grounds of irrelevance, "after the fact," misleading and heresay [*sic*] are, in general, confounding. For example, plaintiffs dispute  the fact as well as the substance of state court decisions on the ground that they allegedly rest on fraudulent evidence. Plaintiffs challenge the relevance of defendants' scientific evidence on the ground that it was obtained "after the fact," yet plaintiffs both argue and concede there is no contemporaneous information. As discussed below, plaintiffs' narrow view of the facts is self-defeating. The essential unavailability of direct evidence cannot be transformed into a material factual dispute.

For the reasons set forth below, this court finds that plaintiffs' claims are barred by collateral estoppel. Since the court does not weigh, *de novo*, the evidence before it, it need not separately analyze plaintiffs' objections to more than one hundred of defendants' proffered undisputed facts.

////

////

No. 31.  The Frontier and U.S. Cellular towers are approximately 65 feet apart, east of the lookout tower.

No. 34.  National standards established by the IEE, FCC and NCRP have set the MPE for controlled/occupational environments equal to one-tenth of the harm threshold and equal to one-fiftieth on the harm threshold for uncontrolled/public environments.

No. 36.  Uncontrolled environments exist where the general public might be exposed or where employees are not aware of the potential for exposure or are unable to control their exposure.

No. 43.  The MPE for cellular service is 580 mW/cm2 (0.000580 W/cm2), and 1000 mW/cm2 for PCS (0.001 W/cm2).

No. 59.  At the time of the February 2, 2005 testing, all State radio transmitter equipment (except three microwave transmitters) was turned off and measurements for ambient RF levels were taken.

No. 92.  State frequencies that were activated for the purpose of making MPE measurements were:  42.08, 42.34, 47.10, 151.415, 153.755, and 858.9875 MHZ.

No. 122.  On May 10, 2004, plaintiff Mary Jasso filed an informal complaint with the FCC's Office of Engineering and Technology alleging that she was experiencing ill health effects due to exposure to RF at Likely Mountain.

No. 133.  When performing direct measurement in order to determine compliance with FCC's RF guidelines, all significant contributors to the ambient RF environment should be considered, including those otherwise excluded from performing routine RF evaluations.

ANALYSIS

A.  PLAINTIFFS' REMAINING CLAIMS

Plaintiffs' remaining claims are (1) state law claim for negligence per se, and (2) violation of 47 U.S.C. § 206, which authorizes damages for personal injury by a common carrier for conduct violating Chapter 47.  As explained below, both claims rest on plaintiffs' principal contention that defendants exceeded, during plaintiffs' tenure on Likely Mountain, the maximum permissible emission standards established by federal regulations.

1.  Negligence Per Se

Under California law, "[t]he negligence per se doctrine is codified in Evidence Code section 669, under which negligence is presumed if the plaintiff establishes four elements:  (1) the defendant violated a statute, ordinance, or regulation of a public entity; (2) the violation proximately caused death or injury to person or property; (3) the death or injury resulted from an occurrence of the nature of which the statute, ordinance, or regulation was designed to prevent; and (4) the person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.  The first two elements are normally questions for the trier of fact, while the latter two elements are determined by the trial court as a matter of law.  *Galvez v. Frields*, 88 Cal.App.4th 1410, 1420 (2d Dist. 2001) (citation omitted).

Application of this standard to the present case requires a threshold finding that defendants violated "a statute, ordinance, or regulation" creating a standard of care owed these plaintiffs.  *See, e.g.*, *Rice v. Center Point, Inc.*, 154 Cal.App.4th 949, 959 (1st Dist. 2007) ("[f]or the presumption to come into play, either the courts or the Legislature must have created a duty of care") (citation and internal quotations omitted).  Plaintiffs claim that defendants owed them the duty of care prescribed by the FCC's regulations and guidelines, particularly the  maximum permissible exposure standards set forth in 47 C.F.R. §§ 1.1305, 1.1307(b), 1.1310; and "OET Bulletin 65," issued by the FCC Office of Engineering and Technology, and entitled "Evaluating

Compliance with FCC Guidelines for Human Exposure to Radiofrequency Electromagnetic Fields" (Aug. 1997). See FAC ¶ 45. Plaintiffs further claim that defendants "did not obey the aforementioned statu[t]e, bulletin and erratum, *supra*, and breached their mandatory and/or statutory duty to protect and/or warn the plaintiffs of the hazardous environment and harmful radiation fields created by their telecommunications use, operations and antennae, at LMTF, and as a direct and as a proximate result of the defendants['] failure to follow relevant statu[t]e, regulations and guidelines and their omissions and failure to warn[], plaintiffs suffered bodily injury and other damages." FAC ¶ 46. Thus, before addressing causation, plaintiffs must establish the relevant standard of care and demonstrate its breach by these defendants.

2.   Violation of 47 U.S.C. § 206

Section 206, Title 47, of the United States Code,[8] renders a common carrier[9] liable for damages for doing anything prohibited, or failing to do anything required, by Chapter 5 of Title 47.[10] Section 207 authorizes any person claiming damages pursuant to § 206 to make a complaint to the FCC, or to bring suit for damages in district court.[11] Plaintiffs rely on the same

---

[8]  47 U.S.C. § 206 provides in full:  "In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

[9]   The FCA defines "common carrier" as "any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this Act; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier." 47 U.S.C. § 153(10).  Defendants do not dispute that they qualify as common carriers as defined under the Act.

[10]  Chapter 5 of Title 47, to which section 206 applies, encompasses provisions §§ 151 through 699, relative to "Wire or Radio Communication."

[11]  47 U.S.C. § 207 provides in full:  "Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for

13

provisions set forth in their negligence claim – in 47 C.F.R. §§ 1.1305, 1.1307(b), 1.1310; and OET Bulletin 65 – to support their claim for damages pursuant to these statutes, premised on a theory of strict liability. *See* FAC ¶¶ 54, 59. The threshold requirement is met – these regulations were promulgated pursuant to the authority of, *inter alia*, Chapter 5 of Title 47.

### B. Collateral Estoppel

#### 1. State Court Decisions

Defendants contend that collateral estoppel bars plaintiffs' claims because their resolution turns on a fundamental issue decided adversely to plaintiffs in state court. In October 2007, the Superior Court of California, County of Lassen, issued decisions in two other cases filed by plaintiffs, granting summary judgment to the state agency defendants on the ground they had met their burden of demonstrating that exposure levels on Likely Mountain did not exceed federal standards. These decisions,[12] both rendered by the Honorable Stephen Bradbury, share the following identical reasoning:

> It appears that the controlling issue revolves around and is determined by the fact of whether Radio Frequency Radiation was at a level that could cause plaintiffs' damages. The determination is one of scientific evidence. The scientific and objective tests that have been performed, after the fact, show that the RFR levels were lower than maximum permissible exposure, except for one area by the handrail of the tower, which was at 100% of the maximum permissible exposure, but did not exceed it. As noted by plaintiffs, none of the tests were done at or near the times plaintiffs were present.
>
> However, the scientific and objective tests are the only known measurements of RFR at the site. Though plaintiffs offer anecdotal evidence from which they infer that the RFR levels may be higher while they were present, such as shocks on the

which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies."

[12] *See* Superior Court of California, County of Lassen, Case No. 41697 (Mary A. Jasso v. California Department of Forestry et al.), Order on Defendants' Motion for Summary Judgment filed October 30, 2007, Defendants' Exh. D; and Superior Court of California, County of Lassen, Case Nos. 41697, 42423, 42424, 42426, 42601, 42602, 42603, 42604, 42605, 52606, 42616 (Consolidated) (Higinio Rojo Jasso, et al. v. California Department of Forestry and Fire Protection, et al.), Order on Defendants' Motion for Summary Judgment filed October 31, 2007, Defendants' Exh. E.

handrail and neurological deficits all experience, they have produced no evidence that the RFR raised to a level exceeding the maximum permissible exposure limits. The question as to this, then, is whether anecdotal evidence – as interpreted by plaintiffs – rises to a level of circumstantial evidence which is to be decided by a trier of fact in trial. The court's conclusion is that is does not: there is no scientific evidence or testimony showing that the RFR at Likely Mountain was ever over the MPE. Plaintiffs' contention rests upon speculation that this might have occurred if one considers the TV antenna and FM antenna, not a part of defendant State's equipment, which is located at the site. Even plaintiffs' expert, Mr. Moore, has no tangible evidence to support the contention. It is, upon analysis, speculation which cannot be presented to a trier of fact, since a finding of liability cannot be based upon speculation.

Defendants have met their evidentiary burden for summary judgment by showing that the RFR did not exceed the Maximum Permissible Exposure (MPE). The burden then shifts to plaintiffs to show that a triable issue of fact exists regarding the question of fact whether the RFR exceeded the MPE. Plaintiffs have failed to do so.

Since the RFR did not rise to a level that would cause damage to a plaintiff, defendants are entitled by law to summary judgment of plaintiffs' causes of action based on: Failure to assess and warn under Title 8 of California Code of Regulations section 8616; Title 47 Code of Federal Regulations section 1.1307(b); and, dangerous condition of public property under Government Code section 835.

          2. <u>Identity of Claims</u>

The controlling issue decided by the Lassen County Superior Court is identical to the central issue in this case, specifically, whether radiofrequency radiation levels on Likely Mountain exceeded federal maximum permissible exposure ("MPE") standards. Absent some evidence that the duty of care established by the federal MPE standards was breached, plaintiffs are precluded from recovery under 47 U.S.C. § 206, and foreclosed from presenting further evidence in support of their negligence per se claim, viz., causation.

Federal MPE standards for RF exposure are set forth in the regulations and FCC bulletin cited both by plaintiffs and defendants. The FCC's maximum permissible exposure limits in controlled and uncontrolled environments are set forth in 47 C.F.R. § 1.1310 (Table). Plaintiffs contend, and defendants concede for present purposes only, that the more restrictive limits applicable to uncontrolled or "public" areas should apply. *See* Opposition, at ¶ 60; *see* Defendants' Memorandum, at p. 7, and their Reply, at p. 14. The most restrictive MPE limits for

an uncontrolled environment applies at frequencies between 30 and 300 MHZ, and are set at an electronic field strength of 0.2 mW/cm2, and power density of 27.5 V/m, regardless of duration of exposure. 47 C.F.R. § 1.1310 (Table); *see also*, Defendants' Exh. A, at 1, and Defendants' Exh. B, at 1. Cellular telephone services operate in the 800-900 MHZ range, *see* 47 C.F.R. § 22.905, and are thus subject to less restrictive MPE standards. 47 C.F.R. § 1.1310 (Table). The parties do not dispute that all existing test results, *on their face*, show radiofrequency radiation substantially under the most restrictive MPE limits.

The controlling issue presented in this litigation, albeit against private entities, is identical to that resolved against plaintiffs in the state action, wherein plaintiffs claimed that defendant state agencies therein: (1) failed to assess and warn plaintiffs of the challenged hazards (citing 8 Cal. Code. Reg. § 8616 (state OSHA requirements)), and 47 C.F.R. § 1.1307(b) (requiring environmental assessment of operations that could cause radiation exposure in excess of the limits set forth in § 1.1310)), and (2) negligently failed to protect plaintiffs from injury (citing Cal. Gov't Code § 835). Absent a showing that the radiation exposure on Likely Mountain exceeded minimal standards, plaintiffs could not state a claim under these provisions. The same is true of plaintiffs' claims before this court. "If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those [that would be used in federal court], then collateral estoppel, in the absence of countervailing statutory policy, would bar relitigation of those issues." *Brown v. Felsen*, 442 U.S. 127, 139, n. 10 (1979).

### 3. Actually Litigated and Necessarily Decided

An issue has been "actually litigated" when it "is properly raised, by the pleadings or otherwise, is submitted for determination, and is determined." *Barker v. Hull*, 191 Cal.App.3d 221, 226 (1st Dist. 1987)(citing *Rest.2d Judgments*, § 27, p. 250). "As a conceptual matter, if an issue was necessarily decided in a prior proceeding, it was actually litigated." *In re Harmon*, 250 F.3d 1240, 1248 (9th Cir. 2001) (but noting that "[t]he converse proposition, by contrast, is

not true. An issue may actually have been litigated without its determination having been necessary to the court's decision" (*id*. at n. 9)). Whether an issue was "'necessarily decided' has been interpreted to mean that the issue was not '"entirely unnecessary"' to the judgment in the prior proceeding." *Murphy v. Murphy*, 164 Cal.App.4th 376, 400 (1st Dist. 2008) (citation omitted); *see also Lucido v. Superior Court*, 51 Cal.3d 335, 342 (1990).

The controlling issue raised, opposed, submitted for decision, and decided, in the Lassen Superior Court cases is whether the RF radiation on Likely Mountain exceeded federal MPE standards during the period 1992 to 2002. This issue was resolved in the state cases, as it is must be here, based on the only known and available measurements at the site. While these measurements were taken after the relevant period, providing only circumstantial evidence of radiation levels during the relevant period of time,[13] the absence of direct evidence does not create a material factual dispute requiring resolution at trial.

Plaintiffs contend that the question of exposure levels on Likely Mountain was not actually litigated or necessarily decided by the state court because the evidence before that court was "false, misleading and/or included perjured statements." Opposition, at ¶ 8. Plaintiffs assert that they "did not learn until after the state summary judgment hearing held October 22, 2007, that State Defendants had allegedly suppressed evidence that when investigated would allegedly show the test reports and declarations submitted to the Superior Court were false, misleading and perjured." *Id*. at ¶ 12. Specifically, plaintiffs "were not able at the time of the hearing, to counter State defendants' engineers Richard Williams and Michael Ensminger's test reports and declarations and the declaration of Mr. Thomas VanStavern, an employee of the Federal Communications Commission." *Id*. at ¶ 11 (citing each of these documents in plaintiffs' own

---

[13] Circumstantial and direct evidence may be equally relied upon. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) ("The reason for treating circumstantial and direct evidence alike is both clear and deep rooted: 'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.' *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508, n. 17 [] (1957).").

exhibits).

Plaintiffs contend that "about the first week of November 2007," (prior to the November 13 and November 20, 2007 entries of final judgments in the state cases, *see* Defendants' Exh. G, at Nos. 149, 159), plaintiffs obtained new information demonstrating that the state test results failed to note all frequencies and magnitude of frequencies under the state's control, "including 9 microwave frequencies that were operated during the years 1992-2002." *See* Opposition, at ¶ 47-52. Plaintiffs reference the handwritten field notes of State Engineer Michael Esminger (Plaintiffs' Exh. 1), the deposition of State Engineer Richard Williams, and hundreds of pages reflecting FCC licenses for Likely Mountain, with extensive technical specifications (Plaintiffs' Exh. 32).

As defendants point out, plaintiffs, who were previously represented by counsel, failed timely to raise these matters, assuming their relevance, to the state court. As countered by defendants, "it was not until plaintiffs' counsel withdrew and the State of California defendants moved the state court to assess the costs of the litigation against the Plaintiffs that the Plaintiffs first raised the issue of supposed fraud and perjury in court. [Defendants' ] Ex. G (entries 150-164)." Reply, at 11. Plaintiffs concede as much. *See* Opposition, ¶ 19, n. 2. Although plaintiffs assert that they "did file a motion to strike costs based on fraud and perjury . . . the Court refused to reconsider, allegedly, stating he would leave it to a higher court to decide the perjury issue." *Id.* Indeed, plaintiffs did file, on November 28, 2007, a Motion for Peremptory Writ of Mandate to vacate the superior court judgments "in light of new found evidence." *See* Defendants' Exh. Y, to Noonan Decl., Dckt. No. 197. The motion was summarily denied with a notation that "[r]emedy by appeal is adequate." Defendants' Exh. N, at p.2. The California Supreme Court summarily denied review. Defendants' Exh. N and O. However, plaintiffs did not pursue an appeal.

"[T]he alleged fraud – consisting of 'deliberate, intentional misrepresentations, untruths, half truths, and deceitfully misleading affidavits, arguments and declarations" . . . is clearly what

courts have consistently characterized as intrinsic fraud, not extrinsic." *Beresh v. Sovereign Life Ins. Co.*, 92 Cal.App.3d 547, 553 (2d Dist. 1979).[14] Relief is not available in a subsequent proceeding on the basis of intrinsic fraud. *Id.* "The reason of this rule is, that there must be an end of litigation; and when parties have once submitted a matter, or have had the opportunity of submitting it, for investigation and determination, and when they have exhausted every means for reviewing such determination in the same proceeding, it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy." *Pico v. Cohn*, 91 Cal. 129, 133 (1891).

Accordingly, plaintiffs' allegations of intrinsic fraud do not undermine the substance of the state court decisions.

Plaintiffs also assert that the VanStavern letter, discussed *supra*, "fails to state . . . that the FCC's investigations is [sic] not 'closed' and investigations are still ongoing and that they refuse to release any information or reports until it is closed and final." Plaintiffs' Motion to Strike, at pp. 13-14 (citing Plaintiffs' Exhibit 14, at pp. 81-82); *see also* Opposition, at ¶ 19. The VanStavern letter (Defendants' Exhibit A) sets forth the results of FCC testing at Likely Mountain in July and December 2005, which found no radiofrequency exposure in excess of the Commission's MPE limits for public or occupational use. Plaintiffs' Exhibit 14 is an August 30, 2007 letter to plaintiff Mary Jasso from Julius Knapp, Chief, FCC Office of Engineering and Technology. Dckt. No. 190-2, at pp. 99-100. The letter acknowledged plaintiff's August 2,

---

[14] "Any fraud is intrinsic if a party has been given notice of the action and has not been prevented from participating therein, that is, if he or she had the opportunity to present his or her case and to protect himself or herself from any mistake or fraud of his or her adversary, but unreasonably neglected to do so. When a claim of fraud goes to an issue involving the merits of the prior proceeding which the moving party should have guarded against at that time, or if the moving party was guilty of negligence in failing to prevent the fraud or mistake or in contributing thereto, or failed to take advantage of liberal discovery policies to fully investigate his or her claim, any fraud is intrinsic fraud." *In re Marriage of Stevenot*, 154 Cal.App.3d 1051, 1069 (1st Dist. 1984).

2007 email request for information about Likely Mountain, including RF radiation levels and

mitigation measures, "for the year 2004." Mr. Knapp stated that "[a] search of the Office of

Engineering and Technology and the Enforcement Bureau revealed material relevant to your

request," but explained that the material would be withheld because it includes inter- or intra-

agency memoranda, or is protected by the  deliberative process privilege. Mr. Knapp referenced

"internal FCC emails dated October 1-4, 2004 . . . [which] reflect opinion, advice, and

recommendation material that is part of the predecisional process concerning a Commission

investigative case," and "[a] draft letter dated July 23, 2004, addressed to you" as "being

withheld as part of the predecisional process." *Id.*

Thus, plaintiffs' challenge to the VanStavern letter is that it omits reference to Mr.

Knapp's acknowledgment that FCC's investigation of Likely Mountain remains ongoing.

However, this acknowledgment, made in 2007, was limited, at least implicitly, to data no earlier

than 2004.[15] Thus, the failure of the March 2006 VanStavern letter to reference the FCC's

ongoing investigation does not appear to omit information relevant to the period encompassed by

plaintiffs' presence on Likely Mountain. Moreover, Ms. Jasso was informed that she could seek

review of Mr. Knapp's response by filing an application for review with the Office of General

Counsel within thirty days, yet plaintiffs do not indicate that they further attempted to obtain this

information, either by seeking review with the FCC Office of General Counsel or pursuant to

further correspondence with Mr. Knapp or the FCC Office of Engineering and Technology.

////

---

[15] The VanStavern letter, like the Knapp letter, references no information prior to 2004. Mr. VanStavern recounted in pertinent part:  "On May 10, 2004, Mary Jasso . . . filed an informal complaint with the FCC's Office of Engineering and Technology ("OET") alleging that she was experiencing ill health effects due to exposure to RFR at the Likely Mountain site. Ms. Jasso filed a subsequent complaint with the FCC's San Francisco District Office on October 6, 2004. Preliminary calculations by OET, based on the licensed transmitters at the site, their height and effective radiated power, among other factors, showed that it was highly unlikely that an RFR violation existed at the site. It was decided that the next time an FCC agent was in the Likely Mountain area, the agency would perform an RFR survey at the site." Defendants' Exhibit A, at p. 2.

1    It remains fundamental that plaintiffs concede they "have not had tests conducted at

2    Likely Mountain for several reasons," including expense and because such evidence would be

3    challenged as "after the fact." Opposition, at ¶ 19. The declarations submitted by plaintiffs do

4    not diminish the speculative nature of their position.[16]

5        This court therefore concludes that the controlling issue in the instant case – whether the

6    radiofrequency radiation on Likely Mountain exceeded federal MPE standards during the period

7    1992 to 2002 – was raised, substantively opposed, actually litigated, submitted for decision,

8    decided, and essential to the judgments of the Lassen County Superior Court.

9            4. State Court Decisions are Final

10       The Lassen County Superior Court granted summary judgment to the state defendants on

11   the merits of the issue that controlled both plaintiffs' claims and the defense. The state court

12   examined and addressed the evidence produced by all parties and concluded, on the merits, that

13   while defendants had met their evidentiary burden for summary judgment, plaintiffs had failed to

14   demonstrate the existence of a triable issue of fact. Accordingly, the state court concluded that a

15

16       [16] For example, Raymond Singer, Ph.D., a neurobehavioral toxicologist and
     neuropsychologist, concluded, based on plaintiffs' completion of Neurotoxicity Screening
17   Surveys, that nearly all plaintiffs tested positive for neurotoxicity and "[t]he most likely
     explanation of their dysfunction is neurotoxicty from RF and EMF pollution emanating from the
18   Likely Mountain site." Singer Decl., at pp. 1-6. Richard A. Tell, a physicist, described generally
     the types of burns and shocks attributable to radiofrequency voltage. Tell Decl., at pp. 1-2.
19   Gerald Moore, a broadcast consultant specializing in radiofrequency radiation measurements and
     analysis, reviewed the state and FCC test results, technical schematics of Likely Mountain, and
20   transcripts of plaintiffs' depositions, and concluded that "plaintiff s may have been exposed to
     levels of electromagnetic radiation that were significantly higher than reported in the
21   aforementioned declarations;" "it is possible that the FM and TV antennas were not even on
     when the readings were taken. There is no way to know [because] the reports . . . were
22   noticeably deficient in not mentioning or identifying all the sources of RF radiation that were
     transmitting at the time of measurement;" and "the radio frequency levels at the site of the trailer
23   could have been higher at the time the plaintiffs were on Likely Mountain tha[n] at the time the
     state and FCC took readings." Moore Decl., at pp. 2, 3, and 5. Finally, Gunnar Heuser, M.D., a
24   neurotoxicologist and plaintiffs' treating physician, opined, based on examinations and objective
     testing (SPECT scans), that each plaintiff has abnormal brain activity consistent with toxic
25   encephalopathy caused by exposure to electromagnetic fields, probably from Likely Mountain.
     Heuser Decl., at pp. 1-5. However, neither this proposed evidence of causation, nor that of Dr.
26   Singer, may be addressed absent a demonstrated breach of the relevant standard of care.

trial would be inappropriate, and granted summary judgment, on the merits, to defendants.

In the California courts, "summary judgment on the complaint is a judgment on the merits." *Columbus Line, Inc. v. Gray Line Sight-Seeing Companies Associated, Inc.*, 120 Cal.App.3d 622, 629 (2d Dist. 1981); *see also Jackson v. Hayakawa*, 605 F.2d 1121, 1125, n. 3 (9th Cir.1979). Moreover, the summary judgments in the state court actions, entered November 13 and November 20, 2007, have become final, as no appeal was taken. *See* Rule 8.104, Cal. Rules of Court (notice of appeal must be filed 180 days after entry of judgment). Clearly, the state court decisions here are decisions "on the merits."

5. Plaintiffs are the Same As, or in Privity With, Plaintiffs in the State Actions

Eleven of the thirteen plaintiffs in this action – all but Mary Jasso and Illa Garcia – were parties to, and actual participants in, the final state court decisions. For purposes of collateral estoppel, these eleven are bound by the state court judgments.

Mary Jasso and Illa Garcia are also bound by the state court judgments based on their privity with the other plaintiffs. California courts apply the concept of privity where there is "a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel." *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 875 (1978) (citations omitted). "In the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication."[17] *Id.*

////

---

[17] "Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation." *Clemmer,* 22 Cal.3d at 875 (citation omitted).

Mary Jasso and Illa Garcia commenced the state court action with the other plaintiffs. As set forth in the related case (*see* n. 1, *supra*), Jasso and Garcia were dismissed from that action after the court determined that their exclusive remedy lay with the California Workers Compensation System. *See also* Defendants' Exh. G. After the superior court denied their request for reconsideration, Jasso and Garcia filed separate notices of appeal which were consolidated for review. On May 25, 2007, the California Court of Appeal Third Appellate District affirmed the trial court's decision. Jasso and Garcia were unsuccessful in their petition for review to the California Supreme Court (August 8, 2007), petition for writ of certiorari to the U.S. Supreme Court (January 14, 2008), and request for rehearing therein (March 3, 2008).

Thus, Mary Jasso and Illa Garcia had a clear "community of interest" with the plaintiffs who remained in the state action. The dismissal of Jasso and Garcia from the state action was based on their unique status, vis a vis the other plaintiffs, as state employees suing, *inter alia*, their employers. However, the additional plaintiffs, all family members of Jasso or Garcia, were included in both the state and present actions on the singular ground that their injuries allegedly resulted from radiation exposure when they visited or lived with Jasso or Garcia. *See* FAC, at ¶¶ 27, 28; Opposition, at ¶ 70. Thus, the purposes of applying collateral estoppel to parties in privity with the unsuccessful parties are expressly met by applying to Jasso and Garcia the substantive decisions and judgments in the state action rendered after their dismissal on other grounds.

For the foregoing reasons, this court concludes that each of the factors for collateral estoppel have been met, precluding relitigation of the controlling issue herein whether radiofrequency radiation on Likely Mountain exceeded federal maximum permissible exposure standards during the period 1992 to 2002.

C. SUMMARY JUDGMENT

Defendants' motion for summary judgment, grounded in collateral estoppel, should be granted. Plaintiffs have failed to demonstrate a genuine and material factual dispute as to the

elements for application of collateral estoppel doctrine to these claims. The claims asserted in this action are the same as those litigated to finality in the state court. "Summary judgment is an appropriate remedy when the doctrine of res judicata in its subsidiary form of collateral estoppel refutes all triable issues of fact suggested by the pleadings and supporting documents," *Sartor v. Superior Court*, 136 Cal.App.3d 322, 327 (2d Dist. 2002), and "when all the material issues of fact in a pending action have been actually and necessarily resolved in a prior proceeding," *S.E.C. v. Freeman*, 290 F.Supp. 2d 401, 404 (S.D.N.Y. 2003) (citing *State of New York v Julius Nasso Concrete Corp.*, 202 F.3d 82, 86 (2d Cir.2000)).

CONCLUSION

For the foregoing reasons, it is hereby RECOMMENDED that:

1. Defendants' motion for summary judgment, Dckt. No. 170, be GRANTED;

2. Judgment be entered in their favor; and,

3. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within ten days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan,* 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: March 11, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE